Giuseppe **MOSCHETTO** and Rosetta Moschetto, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. 96 CV 6026(BDP).

United States District Court, S.D. New York.

May 8, 1997.

Angela Stenrose, Henderson & Brennan, White Plains, NY, for Plaintiffs.

Kathy S. Marks, Asst U.S. Atty., New York City, for Defendant.

MEMORANDUM DECISION and ORDER

PARKER, District Judge.

This action, which is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, concerns injuries alleg-

edly sustained by Guiseppe Moschetto ("Moschetto") during the construction of the United States District Courthouse in White Plains, New York ("the courthouse")—the courthouse in which this Court sits.

Currently before this Court is defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(1), or, in the alternative, for summary judgment, pursuant to Fed. R.Civ.P. 56. I will proceed pursuant to Rule 12(b)(1), which permits the Court to consider evidence outside the pleadings in order to resolve disputed jurisdictional fact issues. *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991) (citations omitted), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exchange National Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir. 1976), *modified on other grounds,* 726 F.2d 930 (2d Cir.1984). For the reasons stated below, defendant's motion to dismiss is granted.

**BACKGROUND**

The injury at issue here occurred on December 9, 1994, at which time Moschetto was an employed as a laborer by Lehrer, McGovern and Bovis, Inc. ("LMB"). LMB had been retained by the General Services Administration ("GSA") to design and construct the courthouse. Moschetto was, at the time of his injury, working for LMB at the courthouse construction site.

Plaintiffs assert that, when injured, Moschetto was "pushing a dumpster up an improperly designed, constructed and inspected ramp, which collapsed causing him to fall, sustaining severe personal injuries." Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion to Dismiss the Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction, or in the Alternative, for Summary Judgment ("Plaintiffs' Memorandum") at 4.

**FEDERAL TORT CLAIMS ACT**

■ As a general proposition, the federal government is immune from suit absent an express waiver of sovereign immunity. *Lane v. Pena,* —— U.S. ——, ——, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996); *Federal De-* *posit Ins. Corp. v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); *United States v. Orleans,* 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976); *Leone v. United States,* 910 F.2d 46, 47 (2d Cir.1990). The FTCA grants such a waiver in negligence actions when a plaintiff's injuries result from "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 2679(b)(1); *see Orleans,* 425 U.S. at 813–14, 96 S.Ct. at 1975–76; *Branch v. United States,* 979 F.2d 948, 950 n. 1 (2d Cir. 1992); *McHugh v. University of Vermont,* 966 F.2d 67, 70 (2d Cir.1992); *Rivera v. United States,* 928 F.2d 592, 608 (2d Cir. 1991); *Leone,* 910 F.2d at 48–49.

Here, the Government contends that it cannot be held liable to Moschetto because all, if any, negligent acts or omissions were committed by LMB, not the Government, and therefore are not actions of a Government employee, within the meaning of section 2679. In support of this contention, the Government relies on, *inter alia,* 28 U.S.C. § 2671, which specifically excludes "any contractor with the United States" from the definition of government employee under the FTCA. 28 U.S.C. § 2671; *Leone,* 910 F.2d at 48 (citing *Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976); *see also Logue v. United States,* 412 U.S. 521, 528, 93 S.Ct. 2215, 2219–20, 37 L.Ed.2d 121 (1973).

Plaintiffs, on the other hand, contend that although LMB had been hired by the GSA to design and construct the courthouse, the Government is nonetheless liable to them for Moschetto's injuries. Plaintiffs assert two theories of governmental liability. The first is seemingly a theory of strict liability based on the Government's role as "owner, operator, developer, controller and designer of the [courthouse]." Plaintiffs' Memorandum at 2. The second is based on what plaintiffs assert is the Government's own negligence in maintaining the construction site in a safe condition.

■ Plaintiffs' first theory—strict liability—cannot be maintained. Plaintiffs assert that:

[p]ursuant to New York State Labor Law Section 200, a landowner has a non-deliga-ble [sic] duty to provide a safe workplace. As the owner of the Courthouse, the Government was responsible to ensure safety in the work area.... Because the Government was the owner of the Courthouse and controlled the work being performed, its argument that it cannot be liable under the New York Labor Law must fail.

Plaintiffs' Memorandum at 10. Yet, the FTCA does not waive sovereign immunity for claims of strict liability, whether derived from state law or some other source. *Berghoff v. United States,* 737 F.Supp. 199, 203 (S.D.N.Y.1989); *cf. Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972) (FTCA's waiver of immunity does not extend to strict liability for ultrahazardous activities claims).

In support of their second theory of liability—that the Government was negligent in maintaining the construction site—plaintiffs note that the Government, in its contract with LMB, reserved the right to "supervise, direct and inspect" the construction site. Plaintiffs' Memorandum at 8. For this point, plaintiffs rely exclusively on *Jappa v. PJR Constr. Co.,* No. 84–3067, 1985 WL 3046 (S.D.N.Y. Oct. 4, 1985), which is inapposite.

In *Jappa,* both the GSA and PJR Construction Company, Inc. ("PJR") were named as defendants in a suit brought under the FTCA. PJR had been hired by the GSA to perform repairs on a federal office building and the plaintiff was injured by pieces of cement which fell from the ceiling of that building. As is the case here, plaintiff asserted a claim against the Government for failing to "safeguard the construction site." *Id.* at *2. Jappa, however, also asserted a claim against the Government for its own negligence in "caus[ing] cement to fall from the ceiling of the building...." *Id.* Relying on the latter claim, the court, in an unreported opinion, denied the GSA's motion for summary judgment because the parties "provide[d] no evidence that the cement fell because of the construction work." *Id.* The court reasoned that if the cement had fallen because of the Government's failure to maintain the building generally, rather than dur-

ing the construction, the Government would be subject to suit. This theory of liability is unavailable to the plaintiffs here as it is undisputed that Moschetto's injury occurred during the construction of the courthouse—at the time of Moschetto's injury there was no existing building which the Government could have failed to maintain properly.

In addition to presenting a *Jappa*-type claim, plaintiffs suggest that the GSA took on significant responsibilities with respect to construction of the courthouse and, by virtue of doing so, transformed its relationship with LMB into that of principal-agent. If the relationship between LMB and the Government were one of agency, then the Government might, consistent with the FTCA, be liable for injuries sustained by Moschetto while working on the courthouse. *See Orleans,* 425 U.S. at 813–14, 96 S.Ct. at 1975–76; *Leone,* 910 F.2d at 49–50.

■ In the context of the FTCA, when seeking to distinguish an agent from an independent contractor, courts should consider the degree of control exercised by the Government over the contracting company. *Orleans,* 425 at 814, 96 S.Ct. at 1976; *Logue,* 412 U.S. at 527–30, 93 S.Ct. at 2219–21; *B & A Marine Co. v. American Foreign Shipping Co.,* 23 F.3d 709, 713 (2d Cir.), *cert. denied,* 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994); *Leone,* 910 F.2d at 50. Generally, an agency relationship will be found when the government exercises "day-to-day control" over the "detailed physical performance of the contractor." *Orleans,* 425 U.S. at 814–16, 96 S.Ct. at 1976–77 (citation omitted). When, in contrast, the government exercises broad supervisory powers, reserves the right to inspect, or monitors compliance with federal law, an independent contractor relationship will most often be found. *See Lipka v. United States,* 369 F.2d 288, 291 (2d Cir. 1966); *Logue,* 412 U.S. at 521–22, 93 S.Ct. at 2216–17.

The contract between the GSA and LMB provides, in relevant part, as follows:

> At all times during the performance of this contract and until work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the worksite a competent superinten-

dent who is satisfactory to the Contracting Officer [of the GSA] and has authority to act for the Contractor.

. . . . .

All work shall be performed under the general direction of the Contracting Officer. . . .

. . . . .

The Contractor is solely responsible for the management (planning, supervision and contract coordination), design (A/E services) and construction (including all labor, equipment, materials and inspections) necessary to provide the construction specified herein, within established schedules.

■ By its terms, the contract provided that LMB would be responsible for executing the construction of the courthouse, while the Government would generally supervise that construction. Such a division of responsibility precludes liability under the FTCA because it provides for LMB to act as an independent contractor not a government agent. *See Orleans*, 425 U.S. at 814, 96 S.Ct. at 1976; *Logue*, 412 U.S. at 528, 93 S.Ct. at 2219–20; *Leone*, 910 F.2d at 48.

■ Plaintiffs nonetheless suggest that the Government took on a greater role than that described in the contract, and thereby established a principal-agent relationship with LMB. First, plaintiffs note that the GSA maintained a "construction shack" on the construction site. Yet, maintenance of such a structure on the site was specified for in the contract, and is consistent with the Government's broad supervisory powers and its retention of the right to inspect. *See Lipka*, 369 F.2d at 291 ("Reservation of the power to control a contractor's compliance with the contract's specifications does not make the contractor an employee."); *Berghoff*, 737 F.Supp. at 202.

■ Second, plaintiffs rely on Declarations by Augustine Porticelli, who was LMB's assistant labor foreman at the construction site, and Moschetto. Porticelli states, "Supervisors employed by the Government, walked the construction site daily and supervised and directed Lehrer, McGovern Bovis, Inc.'s employees on how to perform their duties.

The Government then inspected the work that was performed." Porticelli Decl. at 2. Moschetto states, "During my employment at the United States Courthouse, a Government employee supervised and directed myself [sic] and other Lehrer McGovern Bovis, Inc. employees on how to perform our duties. The Government employee also inspected the work after it was performed." Moschetto Decl. at 2.

These Declarations provide nothing more than conclusory allegations of governmental direction and supervision of LMB's work. As such, they are insufficient to defeat the Government's jurisdictional motion. *See PDK Labs. Inc. v. Friedlander*, 103 F.3d 1105, 1110 (2d Cir.1997) (citation omitted); *Cifarelli v. Village of Babylon*, 93 F.3d 47, 50 (2d Cir.1996); *see also Exchange Nat'l Bank*, 544 F.2d at 1131 ("[J]ust as under Rule 56, a party opposing a Rule 12(b)(1) motion cannot rest on the mere assertion that factual issues may exist . . . conclusory characterizations and arguments [are insufficient]. . . .").

I find that in designing and constructing the courthouse, LMB was a government contractor, not a government agent. Accordingly, plaintiffs' claims against the Government are barred by sovereign immunity, and this Court is without jurisdiction to hear them. I conclude that to hold otherwise would be to eviscerate the intent of Congress when it excluded federal contractors from the definition of government employees for purposes of the FTCA. *See* 28 U.S.C. § 2671; *see also Orleans*, 425 U.S. at 819, 96 S.Ct. at 1978; *Logue*, 412 U.S. at 528, 93 S.Ct. at 2219–20 ("While . . . [C]ongress . . . leaves the courts free to look to the law of torts and agency to define 'contractor,' it does not leave them free to abrogate the exemption that the Act provides.").

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), is granted. The Clerk of the Court is directed to dismiss this action.

SO ORDERED: