Eric **ZIMMERMAN**, Individually and as Next Friend of Guinevere Zimmerman, an Infant, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 01 CIV 5019(CM).

United States District Court,
S.D. New York.

Oct. 17, 2001.

David O. Fuller, Jr., Bosworth, Gray & Fuller, Bronxville, NY, for Eric Zimmerman.

David J. Kennedy, U.S. Atty., Southern District of NY, New York City, for U.S.

MEMORANDUM DECISION AND OR-
DER GRANTING IN PART AND
DENYING IN PART DEFEN-
DANT'S MOTION TO DISMISS
THE COMPLAINT

McMAHON, District Judge.

Plaintiff Eric Zimmerman, individually and on behalf of his daughter Guinevere

Zimmerman, brings this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 and § 1346 (the "FTCA"), alleging that the negligent actions of agents and employees of the United States resulted in injuries to his daughter and to himself. The complaint pleads three causes of action: (1) breach of a federal statutory duty created by 42 U.S.C. § 13031 to report incidents of suspected child abuse; (2) breach of a state statutory duty created by N.Y. Soc. Serv. L. § 413 to report or cause to be reported information that "if correct, would render the child an abused or maltreated child;" and, (3) breach of a common law duty to assist the imperiled.

The Government moves to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds: (1) the Court lacks subject matter jurisdiction over plaintiff Eric Zimmerman individually; (2) the Court lacks subject matter jurisdiction over Eric Zimmerman on behalf of Guinevere Zimmerman; and (3) the Complaint fails to state a claim upon which relief can be granted.[1]

For the reasons stated below, the Government's motion to dismiss Eric Zimmerman's personal claims is granted. The motion to dismiss the claims brought by Zimmerman on behalf on Guinevere Zimmerman is granted in part and denied in part.

### FACTS PERTINENT TO THE MOTION

The following facts are drawn from the complaint and from documents incorporated by reference therein.

At the time the following events occurred, Lieutenant Colonel Eric Zimmerman was a commissioned officer of the United States Army, on active duty at the United States Military Academy ("USMA") at West Point, New York. Eric Zimmerman lived on post with his family. His daughter Guinevere was seven years old.

On June 3, 2000, Lieutenant Commander Mark Stone, a naval officer who, along with his wife and young children, also resided at the USMA at West Point, sexually assaulted Guinevere Zimmerman while she was an overnight guest of one of his daughters. Stone was arrested and charged with various offenses, including forcible sodomy upon a minor. At a court-martial on April 18, 2001, Stone pled guilty to charges of forcible sodomy against Guinevere Zimmerman. A military judge sentenced him to 13 years confinement, total forfeitures, and dismissal from the United States Navy.

Plaintiff alleges that this sexual assault upon Guinevere Zimmerman could have been prevented had certain personnel of a youth ministry program called "God's Gang" reported prior sexual assaults by Stone upon other little girls who were spending the night at his home. God's Gang is a program sponsored and operated by the Post (Protestant Chapel) of the USMA. It holds meetings for youths of different ages to discuss various issues. USMA cadets act as counselors and mentors to the adolescent participants in God's Gang.

■ During one of the God's Gang youth meetings, held at some unspecified

---

**1.** The Government has also petitioned this Court for a stay of discovery pending the resolutions of this motion. Because the World Trade Center disaster has severely impacted the operations of the Civil Division of the United States Attorney's Office, the Court has not yet conferenced the case and no discovery schedule has been set. This Court has already entered an order imposing a 60 day stay in all civil matters involving the United States. Thus, the motion for a stay of discovery is now moot.

time in the months prior to the assault on Guinevere Zimmerman, three girls informed West Point Cadet Ariel Jones, who served as a God's Gang counselor, that each of them awakened during the night, while sleeping over with Stone's daughter, to find Stone standing over them in the dark. One of the girls told Jones that she believed Stone had touched her hand while she slept, and had then, after she moved away from his touch, moved her back to her place on the bed. Neither of the other girls reported any knowledge that Stone had touched them. One of the girls also mentioned that Stone's own daughter had said she felt she had to lock her door at night.[2]

The girls asked Cadet Jones what they should do about the incidents. Jones responded that she would consult her supervisors and get back to them. Cadet Jones then wrote a memorandum about this conversation to Darren Shelburne, the civilian "Youth Ministry Coordinator" of the God's Gang program. She asked him how she should handle the matter.

The information contained in Cadet Jones' memo was allegedly disseminated to at least two members of the Chaplain's Office: Colonel Scott McChrystal, a USMA Chaplain, and another officer now known to be Major Tom Wild. Ultimately, Shelburne, McChrystal, Wild or someone else who had heard about Jones' memo informed Jones that the reports did not warrant further investigation. Jones then told the three girls that further investigation into the matter was unnecessary.

Plaintiff argues that Jones, Shelburne, McChrystal, and Wild knew or should have known: (1) that Stone had committed sexual offenses against the three minor girls; (2) that the girls had not reported these offenses to anyone who had the responsibility of ensuring their safety or of investigating the offenses; (3) that the girls were relying upon agents of the United States

---

2. This account of what was said during the youth meeting is derived from both the complaint and the text of a memo sent from Cadet Jones to her supervisor. It is permissible to rely on such evidence, even if it is not directly quoted in the complaint.

Both parties have submitted additional materials in support of their motions. I have the option of converting this to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(c). However, I am not required to do so, at least not to consider Cadet Jones' memorandum, which is the only document I choose to consider for the 12(b)(6) motion. A court need not convert a 12(b)(6) motion into a summary judgment motion to consider additional materials "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). See also *Envirosource, Inc. v. Horsehead Resource Dev. Co., Inc.*, No. 95 CIV. 5106, 1996 WL 363091, at *5 (S.D.N.Y. July 1, 1996) ("In ruling on a Rule 12(b)(6) motion, the Court may properly take notice of documents outside the four corners of the complaint where, as here, the plaintiff has actual notice of the documents and has relied upon them in framing the complaint."). Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. *Cortec*, 949 F.2d at 47–48.

The Government quoted Cadet Jones' memorandum in its motion to dismiss and provided a copy of it in its affidavit in support of its motion. Plaintiff had notice of the memorandum in drafting his complaint, and relied on the contents of the memorandum in drafting his causes of action. Since the content of the memorandum from Cadet Jones to Shelburne is vital to determining whether plaintiff has alleged violations of the state and federal reporting statutes, its text will be relied upon in determining whether plaintiff has failed to state a claim pursuant to Rule 12(b)(6).

to advise them whether they should report the offenses to others; (4) that the girls were relying on agents of the United States to tell them what they should do to avoid further crimes against them and against other children who had been and would be visitors to the Stone home; and (5) that minor female children, other than those who had spoken with Cadet Jones, were frequently invited to spend the night at the Stone residence, and in the absence of intervention by someone acting to ensure their safety, would do so in the future.

On October 3, 2000, Eric Zimmerman presented the Army with a claim for damages for personal injury to Guinevere and for damages suffered by him. At the time the case was filed, six months had elapsed since these claims were filed and Zimmerman had received no response.

Plaintiff alleges that the God's Gang personnel, specifically Jones, Shelburne, McChrystal, and Wild, should have concluded that the acts reported by the three minor girls were sufficient to raise a suspicion of child abuse; that they had a duty to report such incidents pursuant to 42 U.S.C. § 13031, and that they negligently failed to do so. Plaintiff also alleges that the God's Gang personnel, including Jones, Shelburne, McChrystal, and Wild, had a duty under N.Y. Soc. Serv. L. § 413 to report suspected incidents of child abuse and negligently failed to do so. Finally, plaintiff alleges that Jones, Shelburne, McChrystal and Wild acted as agents and employees of the United States when they received and weighed the confidences of these young girls, and in so doing "voluntarily assumed for themselves and for the United States," the duty to assist Guinevere Zimmerman and other minor children who were at risk for sexual assaults because they might spend the night at the Stone home. Plaintiff contends that their failure to report the conduct of Stone, investigate the matter, and take action to ensure the safety of such minor children was a breach of their (and by extension the United States') common law duty to assist the imperiled.

## DISCUSSION

### I. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

 In evaluating a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Id.* (citing *Norton v. Larney*, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). Courts evaluating Rule 12(b)(1) motions "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir.2000). Where jurisdiction is "so intertwined with the merits that its resolution depends on the resolution of the merits," the court should use the standard "applicable to a motion for summary judgment" and dismiss only where "no triable issues of fact" exist. *London v. Polishook*, 189 F.3d 196, 198–99 (2d Cir.1999) (citation omitted); see also *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 121 n. 1 (2d Cir.1998).

### A. Claims Brought By Eric Zimmerman Individually

 Eric Zimmerman brings his personal claims under the FTCA, which allows civil actions against the Government

based on negligent acts or omissions of its employees. 28 U.S.C.A. §§ 2671–2680, 1346. The Supreme Court has held, however, that this waiver of sovereign immunity by the Government does not apply to liability for injuries to members of the military if these injuries "arise out of or are incident to service." *See Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). This has become known as the *Feres* doctrine.

■ When the Government invokes the *Feres* doctrine on a motion to dismiss, a court must first determine whether a service member's injuries were incurred "incident to service." Some factors that courts have considered are (1) the individual's status as a member of the military at the time of the alleged incident giving rise to the claim, *see Wake,* 89 F.3d at 58 (citing *Persons v. United States,* 925 F.2d 292, 296 (9th Cir.1991)); (2) the relationship of the activity to the individual's membership in the service; (3) the location of the conduct giving rise to the underlying tort claim, *see e.g., Bozeman v. United States,* 780 F.2d 198. 200–01 (2d Cir.1985) (barring claim arising from automobile crash which occurred off base while service member was off duty because service member's intoxication occurred at a military club); and, (4) whether the activity is limited to military personnel and whether the service member is taking advantage of a privilege or enjoying a benefit conferred as a result of military service, *see e.g., Sanchez v. United States,* 878 F.2d 633, 637 (2d Cir. 1989) ("*Sanchez III* ") (barring a claim brought by a serviceman injured in a car fixed by an on-base mechanic shop because the facility was open exclusively to military personnel as a privilege of service, and because the case would involve impermissible civilian inquiry into policies and procedures for operation of facility under con-

trol of military forces). No single factor is dispositive.

Taking these factors as a guide, I conclude that Eric Zimmerman's injuries were incurred incident to military service.

■ At the time of Stone's assault upon his daughter, as well as during the period when defendants allegedly should have reported or investigated the story told to Cadet Jones, Zimmerman was a member of the military on active duty. God's Gang meetings were an adjunct of the military's chaplaincy program. They took place on the military base. They were staffed by military personnel. Zimmerman and his family lived in military housing. The crime against Guinevere Zimmerman was committed by a military officer who was later punished pursuant to the military code. These facts are sufficient to bar plaintiff's individual claims under *Feres.*

Plaintiff argues, that the underlying rationales of *Feres* would be offended if the doctrine were invoked to bar the suit. I disagree.

Three rationales underlie the *Feres* doctrine: (1) concern for keeping courts away from delicate questions involving military discipline; (2) an intention to replace the contingencies of local tort law with a uniform federal scheme; and (3) a desire that this uniformity be achieved through exclusive recourse to the federal system of death and disability benefits. *See Taber v. Maine,* 67 F.3d 1029, 1049 (2d Cir.1995); *see also Feres,* 340 U.S. at 146, 71 S.Ct. 153; *United States v. Johnson,* 481 U.S. 681, 688–91, 107 S.Ct. 2063, 2068–69, 95 L.Ed.2d 648 (1987); *Wake v. United States,* 89 F.3d 53, 57 (2d Cir.1996).

Plaintiff argues that the Second Circuit's 1995 decision in *Taber v. Maine* clarified *Feres* by "divin[ing] a rationale" that limited application of the *Feres* doctrine to cases that were "predicated on the avail-

ability of a worker's compensation-like remedy." (Pl. Mem. in Opp. to Def. Mot. to Dismiss, at 8.) Since Eric Zimmerman could not obtain compensation for the injuries in suit under worker's compensation, he insists that *Feres* should not apply.

■ Plaintiff's argument that *Taber* limits application of the *Feres* doctrine to worker's compensation cases is unsound. *See Wake v. United States,* 89 F.3d 53, 61 (2d Cir.1996) (dismissing plaintiff's argument on appeal that *Taber* created a new test for determining the applicability of the *Feres* doctrine).

The *Taber* Court itself rejected plaintiff's argument that *Taber* limited the application of the *Feres* doctrine. In *Taber,* a Navy serviceman brought a personal injury claim against the Government for injuries sustained while he was off-duty in an off-base accident with another off-duty serviceman who had been drinking on-base. Plaintiff claimed that the Government was vicariously liable for the actions of the defendant, who allegedly acted negligently in driving while he was intoxicated. The Government moved for summary judgment on plaintiff's claims citing *Feres.* The district court granted summary judgment in favor of the Government. The Court of Appeals reversed.

On appeal, the court determined that the proper jurisdictional issue in this particular case was whether plaintiff was entitled to worker's compensation for his injuries. If he was entitled to benefits, then he was injured while acting in the scope of his employment and incident to service. Barring his claims would fulfill the third underlying *Feres* rationale of preserving a uniform federal death and disability benefits program as the sole recourse of injured servicemen. *Taber,* 67 F.3d at 1053. If he was entitled to no worker's compensation benefits, he was not injured while acting in the scope of his employment and incident to service, and no underlying *Feres* rationale applied to his claims. The Court of Appeals found that plaintiff would not be entitled to federal disability payments for his injuries, and his claims against the Government should not be dismissed.

The fact that the Court of Appeals allowed plaintiff to bring his claims against the Government in *Taber* had no impact upon the applicability of the other underlying rationales of *Feres.* In fact, the *Taber* court affirmatively found that another of the three *Feres* rationales, the need to avoid significant judicial interference in military decisions, still played a role in the application of the doctrine. This rationale, once the primary concern in the application of the *Feres* doctrine, has diminished in importance over the years. *See Taber,* 67 F.3d at 1052 (noting that the other two *Feres* factors—the existence of a federal compensation scheme and the desirability of a uniform federal rule—were tantamount to disciplinary considerations). But the Court of Appeals acknowledged that there are rare cases in which the discipline of the party who causes the injury is crucial to the application of a *Feres* bar, while the other two rationales do not apply. *Id.* (noting that the court applied *Feres* in *Bozeman* and *Sanchez III* because plaintiffs' allegations of negligence in the supervision of the tortfeasors, would require the military to defend its employment and other decisions related to certain of their policies).

Eric Zimmerman's individual claims implicate delicate military judgments, namely the decision-making process concerning the hiring and supervision of officers and civilians within the USMA Chaplain's Office, the discipline of such officers and civilians, and the approval and supervision of contractors who operate within the military base. *Feres* prevents this court from

interfering in such military matters when the plaintiff is a member of the military whose injuries arose incident to service. Plaintiff's individual claims would require this court to second-guess the USMA's contractual relationship, hiring, supervision, and discipline of its Chaplain's Office and of God's Gang,—a role on which the *Feres* doctrine frowns.

*Feres* bars only Eric Zimmerman's individual claims. His claims on behalf of his daughter are not barred by *Feres*, even though they raise exactly the same issues and considerations. This may seem incongruous, but *Feres* does not bar suits against the government when the injured plaintiff is a civilian. *See, e.g., Sheridan v. United States*, 487 U.S. 392, 401, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) (injured civilian shot by drunken serviceman could sue under FTCA for navy personnel's negligence in allowing drunken serviceman to leave base with a rifle); *Kohn v. United States*, 680 F.2d 922, 926 (2d Cir.1982) (although *Feres* did bar recovery by the estate of a murdered serviceman, it did not bar claims brought by his parents for the Army's alleged infliction of emotional distress on them subsequent to their son's death). This is true even if the civilian is a military dependent. *See Romero v. United States*, 954 F.2d 223, 225 (4th Cir.1992) (reversing district court's dismissal of civilian dependent's claims, explaining that "claims brought by civilians and civilian dependents of service members who have directly sustained injuries from military personnel are not *Feres*-barred").

B. Claims Brought by Eric Zimmerman on Behalf of Guinevere Zimmerman

■ The Government argues that there is no subject matter jurisdiction over the

claims brought by Eric Zimmerman on behalf of his daughter to the extent Zimmerman alleges any negligent action by Shelburne, because a theory of sovereign immunity precludes claims brought against the United States for injuries caused by its independent contractors.[3] The Government correctly states the rule. *See United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976); *Roditis v. United States*, 122 F.3d 108, 110 (2d Cir.1997). However, application of the rule requires a factual determination of whether an entity is an independent contractor as contemplated in the FTCA, *see Leone v. United States*, 910 F.2d 46, 49 (2d Cir.1990). The Government rests on the proposition that Shelburne, as the coordinator of God's Gang, was an independent contractor who acted outside of USMA supervision. That may be true, but I cannot make any such determination on the record before me.

■ Whether a person is a government employee or an independent contractor for the purposes of the FTCA is a question of federal law. *See Leone v. United States*, 910 F.2d 46, 49 (1990) (citing *Logue v. United States*, 412 U.S. 521, 528, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)). In *Leone*, the estates of two passengers killed in a plane crash when the pilot suffered a heart attack brought an action against the United States under the FTCA. *Id.*, at 47 Plaintiffs alleged that private physicians, who are designated by the Federal Aviation Administration ("FAA") as Aviation Medical Examiners ("AMEs"), were negligent in failing to discover the pilot's unhealthy physical condition when issuing him a medical certificate. *Id.* The Government moved for summary judgment on the grounds that the AMEs were independent

---

**3.** Zimmerman made this argument in his own behalf as well, but it is not necessary to reach the question since the Court lacks subject matter jurisdiction over his personal claims.

contractors and not government employees. The district court denied the Government's motion, and the Government appealed.

■ On appeal, the Court addressed the central question of whether the AMEs were government employees or independent contractors. The FTCA's limited waiver of sovereign immunity makes the Government liable for certain torts of government employees, 28 U.S.C. §§ 1346(b), 2671, but not liable for the actions of independent contractors, *see United States v. Orleans*, 425 U.S. 807, 813–14, 96 S.Ct. 1971, 1975–76, 48 L.Ed.2d 390 (1976). The Court of Appeals found that the "strict control test" governed the inquiry. *Leone*, 910 F.2d at 50. The strict control test asks whether the contractor's day-to-day operations are supervised by the Federal Government. *Id.* Generally, an employee relationship will be found when the government exercises "day-to-day control" over the "detailed physical performance of the contractor." *Orleans*, 425 U.S. at 813–14, 96 S.Ct. 1971 (citation omitted). When, in contrast, the government exercises broad supervisory powers, reserves the right to inspect, or monitors compliance with federal law, an independent contractor relationship will most often be found. *See Moschetto v. United States*, 961 F.Supp. 92, 95 (S.D.N.Y.1997); *Lipka v. United States*, 369 F.2d 288, 291 (2d Cir. 1966). In *Leone*, the Court of Appeals reversed the district court, finding that the evidence proved that the AMEs were not government employees for the purposes of the FTCA because the FAA did not maintain control over their performance and provided no insurance or worker's compensation for the AMEs, and the AMEs relied on their own professional judgment in making decisions, decided who they would examine, were paid directly by the patient, and supplied their own tools, instruments

and place of work. *Leone*, 910 F.2d at 50. The record presented by the parties does not allow me to draw any conclusion, one way or the other, about the status of Shelburne.

■ The Government has provided the Court with a contract between the USMA and Military Community Youth Ministries ("MCYM"), the organization that runs God's Gang. (Kennedy Aff., Exh. C.) The contract consists of a boilerplate form contract titled "Solicitation/Contract/Order for Commercial Items," and two attached schedules. This contract is the only factual evidence before the Court that goes to the degree of control the Chaplain's Office exercised over God's Gang. Standing alone, it is insufficient allow this Court to make a determination of the degree of control exercised. The Government also asserts that there is no subject matter jurisdiction over the Complaint to the extent that it alleges any negligent action by Cadet Jones because Jones acted outside her official capacity as a USMA cadet when serving as a God's Gang counselor. *See* 28 U.S.C. § 2679(b)(1). Again, that may be the case. But there are allegations in the complaint that suggest otherwise. I am in no position to foreclose plaintiff from developing a record that would rebut the Government's rather conclusory contentions in this regard.

The Government also argues that since Jones reported the girls' allegations to Shelburne, plaintiff's claims can not be based on Jones' failure to report. I have little doubt that given Cadet Jones' position in the chain of command, she did all she could by asking her supervisor and superior officers for guidance. That may well entitle her to summary judgment; it does not mean that subject matter jurisdiction is lacking over the claims against her.

The Government's factual attacks on jurisdiction should be supported by ample "affidavits, deposition testimony, and other materials outside the complaint." *See En-sign–Bickford Co. v. ICI Explosives USA, Inc.,* 817 F.Supp. 1018, 1023 (D.Ct.1993). Both parties have submitted a negligible amount of supplemental materials, but the factual record is insufficient to permit me either to accept or reject the Government's arguments. I therefore deny the motion without prejudice to the Government's renewing it on a full record after discovery.

## II Defendant's Motion to Dismiss Guinevere's Claims For Failure to State a Claim

Plaintiff pleads three alternative causes of action against the Government: (1) breach of a federal statutory duty to report incidents of suspected child abuse pursuant to 42 U.S.C. § 13031; (2) breach of state statutory duty to report suspected child abuse pursuant to Title 6, § 413 of the New York Social Services Law; and, (3) breach of a common law duty to assist the imperiled. Defendant challenges these causes of action as legally insufficient under Fed.R.Civ.P. 12(b)(6).

The Government articulates five alternative theories in its motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6): (A) failure to state a claim under the federal statute because the FTCA's "law of the place" requirement can not be satisfied by the violation of a federal statute standing alone; (B) failure to state a claim for failure to comply with the state statute because plaintiff did not allege defendant's willful failure to report incidents of suspected child abuse; (C) failure to state a claim for failure to comply with the state and federal reporting statutes because the memorandum written by Jones to Shelburne does not describe incidents of sexual or child abuse; (D) failure to state a

claim because the God's Gang personnel did not have a duty to report suspected child abuse under the state and federal statutes or under New York law; (E) failure to state a claim because neither the federal or state statutes includes priests, ministers, chaplains or clergy in their lists of mandatory reporters.

The role of a district court in considering a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The court must accept as true the factual allegations made in the complaint, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and the complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### A. "Law of the place" requirement under the FTCA

28 U.S.C. § 1346(b) provides for the district court's jurisdiction of claims under the FTCA:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant, in accordance with the law of

the place where the act or omission occurred.

■ The Government argues that plaintiff's cause of action under the federal statute, 28 U.S.C. § 13031, should be dismissed because the FTCA's "law of the place" requirement can not be satisfied by a violation of federal law standing alone. The Government contends that the FTCA mandates that a federal violation must constitute violations of duties that are "analogous to those imposed under local law." While this statement is true, the federal statute does create a duty, the breach of which can result in a claim of negligence under state law. I therefore conclude that plaintiff's first cause of action under the federal reporting statute should not be dismissed.

■ "The reference in § 1346(b) to the 'law of the place' means the 'whole law' of the state where the incident took place." *Caban v. United States,* 728 F.2d 68, 72 (2d Cir.1984) (quoting *Lambertson v. United States,* 528 F.2d 441, 443 (2d Cir.1976)). Application of the "whole law" requires that I look to all law, including federal law, that a state court would apply in similar circumstances involving a private defendant. *Id.* (citing *Southern Pacific Transportation Co. v. United States,* 462 F.Supp. 1193, 1213 (E.D.Cal.1978)). It is true that in the vast majority of FTCA cases, the "law of the place" will, in fact, be the law of that state, but the language of the Act does not mandate that state law be applied when the state courts themselves would be required to refer to and apply federal law to determine the liability of a private person. *See Southern Pacific Transportation Co.,* 462 F.Supp. at 1213.

In *Caban,* the court permitted the application of federal law in a suit for false imprisonment brought under the FTCA. *Caban,* 728 F.2d at 73. The Court of Appeals reviewed the district court's dismissal of a false imprisonment charge brought under the FTCA for the wrongful detention by INS of a Spanish speaking citizen. On appeal, Caban challenged the district court's application of federal standards to the actions of the INS, arguing that under the FTCA's "law of the place" requirement, the Government had the burden of proving that plaintiff's detention was justified under New York law, and not federal law. *Id.* at 71. The Court of Appeals held that the district court applied proper legal principles in ruling that INS acted in conformance with proper federal standards regarding treatment of applicants for entry to the United States. *Id.* at 73. The court determined that the district court properly began its inquiry by looking to New York's law of false imprisonment. Under New York law, the legal justification for an alleged false imprisonment did not have to be found in New York's substantive law, but could be found in some other body of law, such as federal law. *Id.* at 73. Since New York courts could conceivably apply federal law to determine whether a confinement by federal officials, acting pursuant to federal law, was justified and therefore privileged, such an analysis was permissible under the FTCA. *Id.*

Section 13031 imposes reporting requirements related to suspected cases of child abuse. It applies to "[a] person ... engaged in a professional capacity or activity [as defined in the statute] ... on Federal land or in a federally operated (or contracted) facility." If plaintiff had brought this action against Jones, Shelburne, McChrystal and Wild as private individuals in New York state court, he could state a negligence claim for breach of a duty to report a suspected incident of child abuse under 28 U.S.C. § 13031 against each individual as a professional listed in the statute working in a federal

facility. A New York court would invoke the New York common law doctrine that the breach of a statutory duty is negligence per se. The court would then apply the federal reporting requirement created by § 13031(a). A breach of this duty to report is negligence per se under New York law. *See Chen v. United States*, 854 F.2d 622, 627 (2d Cir.1988) ("In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class '*is* negligence itself.' "); *German by German v. Federal Home Loan Mortgage Group*, 896 F.Supp. 1385, 1396 (S.D.N.Y.1995).

The Government argues that no federal statute can be the basis of a FTCA claim because the Second Circuit has never decided whether "it would be sufficient under the FTCA for a plaintiff to prove breach of a federal statutory duty if the state where the breach took place recognized the doctrine of negligence per se." (Defendant's Reply Brief, at 9 (quoting *Dorking v. United States*, 76 F.3d 1261, 1266 (2d Cir. 1996)).) However, as here, the Second Circuit has not definitively ruled against the proposition, a district court is free to embrace it. Other Circuits have affirmatively concluded that in cases brought under the FTCA, if the federal law has a state analogue, claims based on a breach of a federal statutory can be maintained. *See Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir.1995); *Gelley v. Astra Pharmaceutical Prods. Inc.*, 610 F.2d 558, 562 (8th Cir.

1979) ("[F]ederally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons."); *Zabala Clemente v. United States*, 567 F.2d 1140, 1149 (1st Cir.1977) (". . . even where specific behavior of federal employees is required by federal statue, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability"). Here, N.Y. Soc. Serv. L. § 413 is analogous to 28 U.S.C. § 13031. In light of *Johnson, Gelley*, and *Zabala*, and in light of *Caban*, I find the Government's arguments unpersuasive.

This "law of the place" requirement of the FTCA is not violated by application of the duty created by the federal statute. Defendant's motion to dismiss plaintiff's first claim on this basis is denied.

B. Failure to allege willful failure to report pursuant to the New York statute

The Government next alleges that Zimmerman failed to adequately plead a violation under the New York reporting statute, N.Y. Soc. Serv. L. § 413, because he failed to plead willfulness. Section 413 mandates that certain persons and officials are required to report cases of suspected child abuse or maltreatment.[4] The Government argues that N.Y. Soc. Serv. § 420, a companion to § 413, provides for

4. § 413. Persons and officials required to report cases of suspected child abuse or maltreatment

1. The following persons and officials are required to report or cause a report to be made in accordance with this title when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child, or when they have reasonable cause to suspect that a child is an abused or maltreated child where the parent, guardian, custodian or other person legally responsible for

such child comes before them in their professional or official capacity and states from personal knowledge facts, conditions or circumstances which, if correct, would render the child an abused or maltreated child: any physician; registered physician assistant; surgeon; medical examiner; coroner; dentist; dental hygienist; osteopath; optometrist; chiropractor; podiatrist; resident; intern; psychologist; registered nurse; hospital personnel engaged in the admission, examination, care or treatment of persons; a Christian Science practitioner; school official; so-

liability for a failure to report abuse only if plaintiff pleads a knowing and willful failure to report,[5] and that Zimmerman failed to plead any willfulness. The Government argues that this failure leaves Guinevere's second cause of action legally insufficient.

In his complaint, plaintiff only pleads that "agents, servants, employees and personnel of the Chaplain's Office, USMA, ... obtained information pertaining to the alleged incidents of sexual child abuse suffered by the three, unnamed, minor, female members of God's Gang," (Compl.¶ 46), and that these same persons "were negligent and failed to report this information, thereby breaching this duty," (Compl.¶ 48). The words "knowingly" and "willfully" are not used.[6]

Defendant is correct that New York's Social Services Law provides for civil liability only for the willful failure to report cases of suspected abuse. *See* N.Y. Soc. Serv. § 420; *Kimberly S.M. v. Bradford Central School,* 226 A.D.2d 85, 88, 649 N.Y.S.2d 588, 590 (N.Y.App.Div.1996) (stating that when school official has rea-sonable cause to suspect that a child is abused or mistreated, the New York Social Services Law provides for civil liability for a willful failure to report such abuse). The question is whether an allegation of "willfulness" can be inferred from the other non-conclusory allegations of the complaint. Ordinarily, I would say yes, it can be. But, because plaintiff specifically denominated defendant's state of mind as negligent, not willful, his complaint is insufficient. Negligence is simply not sufficient under the New York statute, and plaintiff failed to provide any argument to support an alternative analysis of the statute.

Plaintiff's second cause of action is dismissed without prejudice. Plaintiff may amend his complaint to comply with the requirements of § 420.

### C. Sufficiency of the memorandum written by Jones under the reporting statutes

 The Government asserts that the information in the memorandum prepared

---

cial services worker; day care center worker; provider of family or group family day care; employee or volunteer in a residential care facility defined in subdivision seven of section four hundred twelve of this chapter or any other child care or foster care worker; mental health professional; substance abuse counselor; alcoholism counselor; peace officer; police officer; district attorney or assistant district attorney; investigator employed in the office of a district attorney; or other law enforcement official. Whenever such person is required to report under this title in his or her capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, he or she shall immediately notify the person in charge of such institution, school, facility or agency, or his or her designated agent, who then also shall become responsible to report or cause reports to be made. However, nothing in this section or title is intended to require more than one report from any such institution, school or agency. At the time of the making of a report, or at any time thereafter,

such person or official may exercise the right to request, pursuant to paragraph (A) of subdivision four of section four hundred twenty-two of this article, the findings of an investigation made pursuant to this title or section 45.07 of the mental hygiene law.

**5.** Section 420, titled "Penalties for failure to report" states:

1. Any person, official or institution required by this title to report a case of suspected child abuse or maltreatment who willfully fails to do so shall be guilty of a class A misdemeanor.

2. Any person, official or institution required by this title to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure.

**6.** Plaintiff failed to respond to this argument in his opposition papers.

by Cadet Jones was insufficient to trigger a reporting requirement under state and federal statute. Since plaintiff's second cause of action based on the state reporting statute has been dismissed, I will focus only on the federal statute.

Section 13031 provides that once a person "learns of facts that give reason to suspect that a child has suffered an incident of child abuse," he must "as soon as possible make a report of the suspected abuse" to a designated agency. 42 U.S.C. § 13031(a). The statute defines child abuse as follows:

(1) the term "child abuse" means the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child;

(2) the term "physical injury" includes but is not limited to lacerations, fractured bones, burns, internal injuries, severe bruising or serious bodily harm;

(3) the term "mental injury" means harm to a child's psychological or intellectual functioning which may be exhibited by severe anxiety, depression, withdrawal or outward aggressive behavior, or a combination of those behaviors, which may be demonstrated by a change in behavior, emotional response or cognition;

(4) the term "sexual abuse" includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children;

(5) the term "sexually explicit conduct" means actual or simulated—

(A) sexual intercourse, including sexual contact in the manner of genital-genital, oral-genital, anal-genital, or oral-anal contact, whether between persons of the same or of opposite sex; sexual contact means the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire of any person.

42 U.S.C. § 13031(c).

Plaintiff alleges that the accounts of Stone's actions given to Jones by the three girls, and the subsequent memorandum written by Jones to Shelburne constituted descriptions of incidents of child abuse and that Jones, Shelburne, McChrystal and Wild had "reason to suspect" that Stone had committed acts amounting to child abuse as defined by § 13031. (Compl.¶ 37.) In order to assess whether plaintiff has stated a viable claim, I must look at the text of the memorandum, submitted by the Government, with the names of the young girls redacted (Kennedy Aff., Exh. B):

Darren,

Here are the details the girls gave me....

* * * *:

said she felt breathing on her face and turned over to see LCDR Stone standing next to her. He said " * * * *, are you ok?" She said "Yes, what are you doing?" He stuttered and said he was fixing the heater. She lay awake until he left the room. This happened in December.

* * * *:

* * * * said she never wakes up at night but that she has been awakened on 3 different occasions while sleeping over at * * * *'s house. Her story is similar to * * * *'s. Each time, she woke up to find him standing over her but she would be still until he left.

* * * *:

Also says she never wakes up at night. She thought she felt something on her hand so she woke up. He was standing over her so she snuggled close to * * * *. He said " * * * *, you are crushing * * * *. Move over here," and then moved * * * * back to her side of the bed. * * * * lay still until he left.

* * * * has friends sleep over a lot. The older daughter * * * * 's friends say that "she feels like she has to lock her door at night."

I think that's all. Please let me know what Chaplain Wild says and whether you think we should approach anyone else. Thanks for your help!

Ariel

Several things are clear. The memorandum does not describe "sexual abuse" or "sexually explicit conduct," as defined in § 13031. The memorandum contains no suggestion that the girls suffered "physical injury." The memorandum does not indicate that the girls exhibited "severe anxiety, depression, withdrawal or outward aggressive behavior, or a combination of those behaviors," which are the hallmarks of "mental injury" under § 13031. So, the statutory reporting requirements were not triggered by the memorandum.

However, in a pre-answer motion to dismiss under Rule 12(b)(6), a court must not dismiss a claim unless it is clear that plaintiff can prove *no* set of circumstances that would entitle him to relief. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). I cannot infer that the memorandum included all the information given to Cadet Jones, or all of the impression she formed about the girls' mental states. Neither can I conclude that the memo contained all the information that Jones gave to Shelburne or her superior officers. Indeed, on its face, the memo appears to have been written after

Jones had a conversation with Shelburne. The record does not reveal what was said in that conversation.

Given the statutory reporting parameters—which are quite specific and quite narrow—it may well be that the Government will be entitled to summary judgment on this claim. However, the complaint sufficiently pleads a cause of action, and plaintiff is entitled to discovery to learn (1) what the girls said to Jones and how they said it; and (2) whether Jones said anything to her supervisor or to her superior officers that would cause a reasonable person to believe they had suffered "mental injury" as defined in § 13031. The motion to dismiss on this ground is denied.

## D. Duty owed by God's Gang personnel to potential victims

 The Government argues that the members of God's Gang personnel had no duty to the potential victims of Stone's future crimes, and specifically had no duty to Guinevere Zimmerman, and their failure to report should not be the basis for any recovery by plaintiff.

The federal and state reporting statutes do not require proof of a common law duty to certain individuals, so the Government's argument has no bearing on those claims. Sections 13031 and 413 impose a statutory duty on persons acting in specific professional capacities to report any suspected incidents of child abuse. The complaint alleges that Jones, Shelburne, McChrystal, and other unnamed "agents, servants, employees and personnel of the USMA Chaplain's Office" were "acting in one or more of the professional capacities and/or performing one of the activities enumerated" in the federal statute and were "among the persons or officials enumerated" in the New York statute. (Compl. ¶¶ 37, 46.) Plaintiff does not need to prove a common

law duty to potential victims of Stone in order to allege a violation of the reporting statutes. The Government's argument that plaintiff has failed to allege a common law duty has no effect on the claims based on the breach of statutory duties.

The Government's argument does pertain to the plaintiff's common law claim. The Government argues that plaintiff failed to sufficiently allege that God's Gang had a "specific duty" to protect Guinevere Zimmerman. (Gov. Reply. Mem., at p. 7). To the contrary, plaintiff alleged that the various agents and employees of the United States "by their conduct, voluntarily assumed for themselves and for the United States, the duty to assist the imperiled, including without limitation, all those minors for whom it was reasonably foreseeable that they would be invited to spend the night at the Stone residence, and in the absence of intervention by someone to ensure their safety, might, in the future, spend the night at the Stone residence." (Compl.¶ 55.) Plaintiff specifically included Guinevere Zimmerman in the group of foreseeable victims. (Compl.¶ 56.)

In order for this Court to dismiss the common law claim on a Rule 12(b)(6) motion to dismiss, I would have to make factual determinations of the reasonable expectations and states of mind of both God's Gang personnel, the USMA Chaplain's Office, the members of God's Gang and the parents of those members. *See Palka v. Servicemaster Mgmt. Servs. Corp.,* 83 N.Y.2d 579, 611 N.Y.S.2d 817, 634 N.E.2d 189 (1994) ("[W]hile the existence of a duty involves scrutiny of the wrongfulness of a defendant's action or inaction, it correspondingly necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty.") The factual record is insufficient to permit me to accept or reject the Government's arguments at this time. The motion to dismiss on this ground is denied.

**E. Duty Owed by priests, ministers, chaplains or clergy**

 Finally, the Government claims that the Chaplains supervising the God's Gang program had no duty to report incidents of child abuse under either the state or federal reporting statutes. Both statutes exclude clergy, chaplains, priests, and ministers from the list of mandatory reporters, unless they are engaged in specific non-clerical activities. The Government claims that the God's Gang personnel acted as religious personnel at all times, and therefore had no duty to report suspected incidents of child abuse.

The complaint does not specifically allege that the defendants were engaged in nonreligious or non-clerical activities, and plaintiff does not mention the specific activity or profession the chaplains were engaged in to satisfy the requirements of the reporting statutes.

Section 13031 provides that the following individuals are mandatory reporters:

Persons engaged in the following professions and activities are subject to the requirements of subsection (a) of this section:

(1) Physicians, dentists, medical residents or interns, hospital personnel and administrators, nurses, health care practitioners, chiropractors, osteopaths, pharmacists, optometrists, podiatrists, emergency medical technicians, ambulance drivers, undertakers, coroners, medical examiners, alcohol or drug treatment personnel, and persons performing a healing role or practicing the healing arts.

(2) Psychologists, psychiatrists, and mental health professionals.

(3) Social workers, licensed or unlicensed marriage, family, and individual counselors.

(4) Teachers, teacher's aides or assistants, school counselors and guidance personnel, school officials, and school administrators.

(5) Child care workers and administrators.

(6) Law enforcement personnel, probation officers, criminal prosecutors, and juvenile rehabilitation or detention facility employees.

(7) Foster parents.

(8) Commercial film and photo processors.

42 U.S.C. § 13031(b).[7]

Although it is true that the reporting statutes do exclude clergy, the complaint does allege (albeit in conclusory form) that Jones, Shelburne, McChrystal, and other unnamed "agents, servants, employees and personnel of the USMA Chaplain's Office" were "acting in one or more of the professional capacities and/or performing one of the activities enumerated" in the federal statute and were "among the persons or officials enumerated" in the New York statute. (Compl.¶¶ 37, 46.) Furthermore, neither Jones nor Shelburne is a member of the clergy, and so cannot take advantage of the clerical exemption. In fact, plaintiff refers to Jones as a counselor throughout his complaint, a professional

covered in the federal statute. 42 U.S.C. § 13031(b)(3). For this reason alone, plaintiff's claims cannot be dismissed.

The Government provides no authority for the proposition that because someone is a member of the clergy, he can not be a mandated reporter if he is engaged in a non-clerical activity. Indeed, the law is to the contrary. *See e.g., People v. Hodges,* 13 Cal.Rptr.2d 412, 10 Cal.App. 4th Supp. 20, 34 (1992) (affirming conviction of pastor and assistant pastor, who were also president and principal of church-run school, for violation of statute requiring child care custodian to report known or suspected instances of child abuse, finding that they acted in their roles as school officials, and not as members of the clergy); *State v. Motherwell,* 114 Wash.2d 353, 788 P.2d 1066, 1069 (1990) (finding that although legislature intended to exempt clergy from child abuse reporting statute, "[s]imply establishing one's status as "clergy" is not enough to trigger exemption in all circumstances;" rather, one "must also be functioning *in that capacity* for exemption to apply") (emphasis in original). The fact that McChrystal and Wild are clergy is not sufficient to trigger an exemption from the reporting statutes; the Government will have to show that they were acting in that capacity.

## CONCLUSION

The Government's motion to dismiss Eric Zimmerman's individual claims is

---

**7.** The New York statute, N.Y. Soc. Serv. L. § 413, which is not applicable unless plaintiff chooses to replead that cause of action, imposes mandatory reporting duties on the following persons:

any physician; registered physician assistant; surgeon; medical examiner; coroner; dentist; dental hygienist; osteopath; optometrist; chiropractor; podiatrist; resident; intern; psychologist; registered nurse; hospital personnel engaged in the admission, examination, care or treatment of persons; a Christian Science practitioner; school official; social services worker; day care center worker; provider of family or group family day care; employee or volunteer in a residential care facility defined in subdivision seven of section four hundred twelve of this chapter or any other child care or foster care worker; mental health professional; substance abuse counselor; alcoholism counselor; peace officer; police officer; district attorney or assistant district attorney; investigator employed in the office of a district attorney; or other law enforcement official.

granted. The Government's motion to dismiss the second claim brought by Zimmerman on behalf of his daughter Guinevere pursuant to N.Y. Soc. Serv. L § 413 is granted; this claim is dismissed without prejudice. The government's motion to dismiss all other claims brought by Zimmerman on behalf of Guinevere is denied.

This constitutes the order and decision of the Court