■ In the Matter of ALEX LL., Appellant, v ALBANY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 1.) In the Matter of ALEX MM., Alleged to be a Permanently Neglected Child. ALBANY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ALEX LL., Appellant. (Proceeding No. 2.) [703 NYS2d 577] —Mercure, J. P. Appeals (1) from an order of the Family Court of Albany County (Maney, J.), entered October 15, 1998, which dismissed petitioner's application, in proceeding No. 1 pursuant to Family Court Act article 6, for custody of his child, and (2) from an order of said court, entered June 24, 1999, which granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

Alex LL. (hereinafter the father) is the biological father of Alex MM. (hereinafter the child), who was born in 1995. The two have never lived together. Three weeks following his birth, the child was removed from his mother's home by the Child Protective Services Unit of the Albany County Department of Social Services (hereinafter DSS) due to the fact that the mother had used cocaine during her pregnancy and the child tested positive for cocaine at birth (see, Matter of Alex MM., 260 AD2d 675). The mother was found to have neglected the child and her parental rights were ultimately terminated upon a finding of abandonment (see, id.).

Within one week following the child's removal by DSS, the father filed the first of a series of petitions seeking custody of the child. A July 6, 1995 consent order granted the father supervised visits with the child upon his completion of a substance abuse evaluation and also provided that the father was to cooperate in obtaining a psychological assessment. On March 16, 1998, the father filed the petition in proceeding No. 1.[1]

At the initial appearance on the petition following the appointment of counsel for the father, Family Court adjourned the matter so that the father could undergo a psychological evaluation scheduled for May 1, 1998. At the next appearance, DSS recommended, and Family Court ordered, that an extensive family assessment be conducted at Parsons Child and Family Center and also that the father submit to a full mental health evaluation. Although expressing considerable frustration with the repeated obstacles that Family Court was placing in his path, the father agreed to cooperate.

Finally, at an October 15, 1998 appearance, the father's counsel expressed dissatisfaction with a continuation of the outstanding visitation arrangement, which permitted the father only one hour of supervised visitation each week. Those comments caused Family Court to recall some prior occasion when the father had called him and other court personnel "white devils" and then pointedly ask whether the father wanted to continue with supervised visitation at St. Catherine's

---

1. Because of Family Court's failure to conduct a hearing in proceeding No. 1 and its severe restriction on the evidence in proceeding No. 2, the record discloses very few details concerning the custody proceedings that preceded proceeding No. 1 or, in fact, any events taking place during the child's first 2½ years in DSS custody. We are able to establish that the father initiated at least four prior custody proceedings, but that a hearing was never conducted. By Family Court's own statement, the father "has continually filed petitions in [Family Court] that [were] dismissed due to his unwillingness to partake in services recommended by [DSS]".

Center for Children. The father responded by expressing the belief that he was not being treated fairly in Family Court and the desire that the matter go to the Court of Appeals "in front of another judge". Based upon that statement, Family Court summarily dismissed the petition. The subsequent order of dismissal recited that the petition was dismissed because "petitioner has withdrawn the petition [and] * * * does not [wish] to cooperate with services at St. Catherine". The father appeals.

In January 1999, DSS filed the petition in proceeding No. 2 seeking to terminate the father's parental rights pursuant to Social Services Law § 384-b (7) (a) based upon the father's alleged failure, from the birth of the child in 1995 through the filing of the petition, to plan for the future of the child by failing to meaningfully, substantially or consistently participate in the various programs that had been dictated by DSS and Family Court and, in fact, in continuing to deny that the programs were necessary. At the ensuing fact-finding hearing, the father's counsel made an opening statement outlining the father's defense that he had continuously shown an interest in obtaining custody of the child, that he had never been charged with abuse or neglect of any child and that he was "contesting the basis over which [DSS and Family Court] ha[d] imposed the conditions * * * which he is presently charged with refusing to comply with and which form the basis of the * * * petition". Nonetheless, DSS offered no evidence of any objectionable conduct on the father's part or demonstrated deficiencies in his parenting ability that would have justified the services that were ordered by Family Court. Further, although the father and his counsel made repeated efforts to establish the absence of any such factors, Family Court strictly limited the hearing evidence to the issue of the extent of the father's participation in mandated services during the six-month period immediately preceding the filing of the petition.[2]

At the conclusion of the fact-finding hearing, Family Court made a summary finding of permanent neglect, setting forth the rationale that "consider[ing] [the father's] failure to utilize available services and his failure to take steps to correct problems which initially led to the child's removal * * * [t]he testimony amply demonstrates [the father's] failure to plan for the future of his child". The father appeals the ensuing dispositional order which terminated his parental rights.

---

**2.** Even if there was a basis for limiting the evidence to the statutory period (and, given the nature of the father's defense to the petition, there clearly was not), we note that under Social Services Law § 384-b (7) (a) the relevant period is one year and not six months.

In our view, Family Court's fundamental error (and DSS' complicity cannot be overlooked) in both proceedings was in impliedly charging the father with conduct committed by the mother. In fact, the records in these proceedings reveal no evidence that the father would not be a proper custodian for the child or that the child would be at risk in his custody. To the contrary, despite Family Court's limitation on the evidence received, the record generally supports a finding that the father is qualified to serve as a custodian for the child.

As earlier noted, the father did not live with the mother at the time of the child's birth and there is no evidence that he shared her cocaine habit. Indeed, there is some reason to believe that he refused to live with her because of her drug dependency. The father was not named as a respondent in the neglect and abandonment petitions that were filed against the mother and no findings were made as to him. As for the father's drug use, the record discloses only that he used marihuana on one occasion and thereafter voluntarily participated in and completed a 16-week drug rehabilitation program. There is no evidence of any other history of drug or alcohol abuse or that the father had ever been convicted of a crime, and it appears that he was regularly employed as a construction worker during the period at issue. Contrary to DSS' consistent position that the father had no child-rearing experience, the record establishes that he lived with his fiancee and her five children and, in fact, that his initial association with his fiancee was as her babysitter. Further, Mary Purdy, a permanency clinician and consultant at Parsons Child and Family Center, testified that the father had been found to be an appropriate custodian of another infant son of his. Perhaps most telling are the following statements from Purdy's October 14, 1998 family assessment:

[The father] reports that he completed his [drug] treatment and has the proper documentation corroborating this claim. He also has completed parenting classes and he reports a satisfactory status with the prevention program at St. Catherine's. This consultant became puzzled then by the decision of others i.e. the court, DSS as well as [the mother] and her family to either prevent or limit [the father's] contact with his sons. that assessment was received by Family Court on the same day that it dismissed the petition in proceeding No. 1.

In our view, proceeding No. 1 is governed by the fundamental premise that "[a] natural parent has a claim to the custody of his or her child 'superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the

duties and privileges of parenthood'" (*Matter of Alfredo S. v Nassau County Dept. of Social Servs.*, 172 AD2d 528, 529, *lv denied* 78 NY2d 852, *appeal dismissed* 78 NY2d 899, quoting *People ex rel. Kropp v Shepsky*, 305 NY 465, 468; *see, Matter of Michael B.*, 80 NY2d 299, 309; *Matter of Shane OO.*, 228 AD2d 805, 806). Therefore, DSS having made no demonstration (or even allegation) of the father's "surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances" justifying the State's intrusion into the family domain (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 544; *see, Matter of Alfredo S. v Nassau County Dept. of Social Servs.*, *supra*, at 529), there was no valid basis for denying the petition (*see, Matter of Bennett v Jeffreys*, *supra*, at 549; *Matter of Alfredo S. v Nassau County Dept. of Social Servs.*, *supra*).

In addition, although Family Court had authority to order the father to submit to a psychological examination (Family Ct Act § 251 [a]), it had no right to require him to participate in supervised therapeutic visitations as a condition precedent to the entertainment of the merits of the custody petition (*see, Matter of Dennison v Short*, 229 AD2d 676, 677; Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 251, at 261-262). But for the fact that the child has now been in foster care for nearly five years, albeit through no fault of the father, we would reverse Family Court's order in proceeding No. 1 and make an award of custody to the father. At this stage, however, we believe that the matter should be remitted to Family Court for an expedited hearing and determination as to whether the father is a fit parent and entitled to custody of the child (*see, Matter of Michael B.*, *supra*, at 317-318).

In proceeding No. 2, the critical issue is whether DSS met its burden of establishing that the plan it prescribed for the father was "realistic and tailored to fit [his] individual situation" (*Matter of Jesus JJ.*, 223 AD2d 955; *see, Matter of Jessica UU.*, 174 AD2d 98). As earlier noted, DSS made no effort to satisfy that burden and Family Court repeatedly thwarted the father's efforts to establish the lack of any reasonable basis for the plan that was put in place. Of course, given that the child never was taken from the father and no valid reason has been shown for denying the father custody in the first instance, we believe that DSS had little hope of identifying any circumstances preventing the "return" of the child to his custody. The issues identified in the petition, i.e., that the father never had custody of the child and his history of alcohol/substance abuse, lack of parenting skills and failure to consistently visit the child, all

relate to matters that had no valid basis in fact, were wholly outside the father's control or had no realistic bearing on his competence as a custodial parent. Obviously, the petition should have been dismissed at the conclusion of DSS' case, if not earlier.

As a final matter, we conclude that Family Court's demonstrated hostility toward the father and his counsel requires that all further proceedings be conducted before a different judge.

Crew III, Peters, Spain and Graffeo, JJ., concur. Ordered that the order entered October 15, 1998 is reversed, on the law, without costs, petition reinstated and matter remitted to the Family Court of Albany County for a hearing before a different Judge. Ordered that the order entered June 24, 1999 is reversed, on the law, without costs, and petition dismissed.