[908 NYS2d 559]

In the Matter of KEITH B., a Child Alleged to be Neglected. STEPHANIE W., Respondent.

Family Court, Clinton County, September 30, 2010

**APPEARANCES OF COUNSEL**

*Dennis D. Curtin, County Attorney*, Plattsburgh (*Michael J. Hartnett* of counsel), for petitioner. *Keith M. Bruno*, Platts-

burgh, for respondent. *Matthew Douthat*, Plattsburgh, for John W. *Nathan R.*, pro se. *Cheryl Maxwell*, Plattsburgh, for Keith B. and another.

## OPINION OF THE COURT

TIMOTHY J. LAWLISS, J.

Stephanie W. and Nathan R. are the biological parents of Keith B. (date of birth xx/xx/2007). Stephanie W. and Nathan R. have never been married.

On May 5, 2010, the Clinton County Department of Social Services (hereinafter the Department) filed a petition under article 10 of the Family Court Act alleging that Stephanie W. neglected the subject child and the subject child's half sibling. The Department did not file any petition naming Nathan R. as a respondent. Prior to the filing of the petition in this action, no court had ever issued any order concerning the custody of the subject child. At the time that the article 10 petition was filed against Stephanie W., the child was not in the physical custody of Nathan R. and Nathan R. had had extremely limited (if any) contact with the child.

Based upon Stephanie W.'s voluntary admissions, the court found that Keith B. is in fact a neglected child as that term is defined by section 1012 of the Family Court Act and that Stephanie W. is the person responsible for the neglect. Subsequently, the court conducted a dispositional hearing pursuant to article 10 of the Family Court Act. During that dispositional hearing, the Clinton County Department of Social Services, the attorney for the child, and Stephanie W. all advocated that the subject child be placed with the Commissioner of the Clinton County Department of Social Services until the completion of the next permanency hearing and that it would be contrary to the best interest of the subject child for the child to be released to the custody of Nathan R.[1] Nathan R. argued that there had been no neglect finding against him and that it was in the best interest of the child to release the child to his custody.

The legal question presented to the court is whether or not the court is obligated, on the facts of this case, to place the child with Nathan R. or may the court, if it determines it is in the best interest of the subject child, select a different dispositional

---

1. Prior to Nathan R.'s appearance in the action, the child was temporarily placed with the Commissioner of the Clinton County Department of Social Services pursuant to Family Court Act § 1027.

alternative (*see Matter of Telsa Z. [Rickey Z.—Denise Z.]*, 71 AD3d 1246 [3d Dept 2010]).

In *Telsa Z.*, the local Department of Social Services filed a petition under article 10 on behalf of two girls against the subject children's father alleging that he had directly sexually abused one girl and derivately abused the other girl. The local Department of Social Services did not file a petition against the children's mother. Prior to the filing of the article 10 petition against the father, no court had ever issued any order concerning the custody of the subject children. At the time that the article 10 petition was filed against the father in *Telsa Z.*, the children were residing with both their mother and their father. Upon fact-finding, the trial court found that the father's alleged abuse did occur and ordered a dispositional hearing.

During the *Telsa Z.* dispositional hearing, the trial court made findings that the subject children's mother knew that the father was sexually abusing one child and did nothing to protect the children. The court also found that the mother had three older daughters removed from her care when she allowed prior boyfriends to sexually abuse the older girls and then violated orders of protection to keep those prior boyfriends away from her older girls.[2] Upon these findings, and over the objection of both parents, the trial court placed the subject children with the Commissioner of the Clinton County Department of Social Services.

Both parents appealed. On appeal, the Appellate Division, Third Department, did not disturb any of the trial court's factual determinations; however, the Third Department found that the trial court did not have the authority to place the subject children outside of their mother's custody because the local Department of Social Services had not filed an article 10 petition naming the mother as respondent. (71 AD3d at 1251.) It should be noted that the Third Department did not state that the trial court had abused its discretion in placing the children with the Commissioner, but that that placement was not an option legally available to the trial court.

Recognizing that *Telsa Z.* is binding authority, the court distinguishes the case at bar from *Telsa Z.* on the facts. In *Telsa Z.*, the subject children were residing in their mother's home at

---

**2.** The respondent in *Telsa Z.* (the father of the subject children) was not the father of the mother's older three girls. At the time that the older girls were being abused, the father was not in a relationship with the mother and had no connection to that abuse.

the time that the trial court placed the children. In this case, the subject child never resided in his father's home. The *Telsa Z.* Court found that the trial court erred by "removing the children from their *home* with [their mother] despite the lack of a petition against her" (71 AD3d at 1250 [emphasis supplied]). In this case, although the father may argue he had joint legal custody (because no custody order was ever entered), the child never resided in his father's home and, therefore, an order of disposition placing the child, with someone other than the father, would not be an order removing the child from his father's home. On that basis, this court distinguishes the instant case from *Telsa Z.* and concludes that the court can issue an order of disposition consistent with Family Court Act § 1052 which serves the best interest of the child. The best interest analysis will be addressed in a separate order.

Notwithstanding this court's holding that *Telsa Z.* is not controlling on these facts, the court feels compelled to include a plea for reconsideration of the holding in *Telsa Z.* for the sake of the children subject to future article 10 proceedings in New York State Family Court. This court respectfully suggests that the *Telsa Z.* holding contradicts the plain language of the Family Court Act and inhibits the court's ability to protect children who have been abused and neglected.

With respect to the plain language of the Family Court Act, the court will review Family Court Act §§ 1052, 1035, 1027 and 1017.

Family Court Act § 1052 (a) reads as follows:

"(a) At the conclusion of a dispositional hearing under this article, the court shall enter an order of disposition directing one or more of the following:

"(i) suspending judgment in accord with section one thousand fifty-three of this part; or

"(ii) releasing the child to the custody of his parents or other person legally responsible in accord with section one thousand fifty-four of this part; or

"*(iii) placing the child in accord with section one thousand fifty-five of this part; or*

"(iv) making an order of protection in accord with one thousand fifty-six of this part; or

"(v) placing the respondent under supervision in accord with section one thousand fifty-seven of this part; or

"(vi) granting custody of the child to relatives or

suitable persons pursuant to section one thousand
fifty-five-b of this part." (Emphasis added.)

With respect to the third option (placement), there are no
limitations contained in either Family Court Act § 1052 or 1055
which prohibit placement of neglected or abused children to
situations where all the living parents are named as respondents
in the action. The plain reading of those sections suggest that
any finding of neglect or abuse made pursuant to article 10 with
respect to a child gives the Family Court the authority to place
the child in a number of situations including with the local
Commissioner of Social Services. The Legislature has given
Family Court specific options available to it in all abuse and ne-
glect matters. *Telsa Z.* has, without declaring the statute uncon-
stitutional, limited the Family Court's options when the subject
child resides in the home of a nonrespondent parent.

Similarly, Family Court Act § 1027 (b) (i) addresses the court's
options after a temporary removal is made. After the removal,
the court is required to make various inquiries of the Depart-
ment of Social Services including inquiries related to nonre-
spondent parents. This section then goes on to identify the op-
tions available to the court, including temporary placement
with the Department of Social Services. There is nothing in
Family Court Act § 1027 that restricts the court from tempo-
rarily placing the child with someone other than a nonrespon-
dent parent (*see* Family Ct Act § 1027 [b] [i] [A]). Although
*Telsa Z.* does not specifically address temporary orders, its logic
would appear to apply equally to temporary orders. Certainly, if
the court cannot place a child, after a full fact-finding hearing,
outside of the child's home when the child lives with a nonre-
spondent parent, the court could not do so prior to a full fact-
finding hearing. It would be illogical to permit the court to do
something temporarily prior to a finding of abuse or neglect
that it could not do after a finding of abuse or neglect.

In addition, Family Court Act § 1017 (2) identifies the alterna-
tives available to the court after a child has been removed and
the Department of Social Services has conducted an investiga-
tion of suitable relatives. Family Court Act § 1017 (2) (a) reads:

"(a) where the court determines that the child may
reside with a suitable non-respondent parent or
other relative or other suitable person, either:
"(i) grant an order of custody or guardianship to
such non-respondent parent, other relative or other

suitable person pursuant to section one thousand fifty-five-b of this article; or

"(ii) place the child directly in the custody of such non-respondent parent, other relative or other suitable person pursuant to this article during the pendency of the proceeding or until further order of the court, whichever is earlier and conduct such other and further investigations as the court deems necessary; or

"(iii) remand or place the child, as applicable, with the local commissioner of social services and direct such commissioner to have the child reside with such relative or other suitable person and further direct such commissioner pursuant to regulations of the office of children and family services, to commence an investigation of the home of such relative or other suitable person within twenty-four hours and thereafter approve such relative or other suitable person, if qualified, as a foster parent. If such home is found to be unqualified for approval, the local commissioner shall report such fact to the court forthwith."

Under these provisions, the court may, but does not have to, direct that a child reside with a nonrespondent parent when the nonrespondent parent is suitable.[3] Thus, even when the nonrespondent parent is suitable, the plain language of this section grants the court the option of placing the child with someone other than a nonrespondent parent including the local Commissioner of Social Services. (Family Ct Act § 1017 [2] [a] [iii].) The term nonrespondent parent in this section is not qualified in any way. In a situation where the local Department of Social Services has filed a petition against just one parent and the other parent is deemed suitable by the court, it would again be logically inconsistent to permit the court to place the child with someone other than the nonrespondent parent during the pendency of the article 10 proceeding, but prohibit the court from making the same placement after a finding of neglect or abuse is made against the respondent parent. Indeed, the Appellate Division, Second Department, has went so far as to hold

---

3. It should be noted that the use of the term "suitable" in this context means an analysis as to whether or not the best interest of the child would be served by directing that the child reside with a nonrespondent parent (*see Matter of Jesse M. [Cynthia L.]*, 73 AD3d 780 [2d Dept 2010]; *Matter of Deborah E.C. v Shawn K.*, 63 AD3d 1724, 1725 [4th Dept 2009]; *Matter of Harriet U. v Sullivan County Dept. of Social Servs.*, 224 AD2d 910, 911 [3d Dept 1996]).

that it was reversible error to release a child to a nonrespondent father pursuant to Family Court Act § 1017 without first holding a hearing to determine whether or not the father is a suitable temporary custodian. (73 AD3d 780 [2010].)

Similar language is contained in Family Court Act § 1035 (d) (ii), which states: "[I]f the court determines that a child must be removed from his or her home, the court *may* order an investigation to determine whether the non-respondent parent or parents would be suitable custodians for the child." (Emphasis added.)

Again, the use of the term "may" clearly implies that the court has an option after it determines that the child must be removed from the child's home. There would be no point in ordering an investigation to determine if the nonrespondent parent is a suitable custodian if the court has no option but to release the child to the nonrespondent parent regardless of the suitability of that parent.

*Telsa Z.* also appears to conflict with precedent. In *Matter of Alex LL. v Albany County Dept. of Social Servs.* (270 AD2d 523 [3d Dept 2000]), the Court addressed the following situation. The local Department of Social Services filed a neglect petition against a child's mother which resulted in the subject child being placed in the custody of the Commissioner of Social Services. At the time of the placement, the child did not reside with the father and apparently there were no preexisting custody orders. After the child was placed with the Commissioner, the father filed a petition seeking custody of the subject child. The trial court dismissed the father's custody petition, but the Third Department reversed and stated that the custody proceeding was governed by the fundamental principle that "[a] natural parent has a claim to the custody of his or her child superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood." (270 AD2d at 526-527 [internal quotation marks and citations omitted].) It should be noted that in *Alex LL.* no article 10 petition was ever filed against the father. Notwithstanding the lack of an article 10 petition, in *Alex LL.*, the Third Department would not have permitted the continued placement of the child, if the Department of Social Services had proved the father was unfit. This court respectfully suggests that that same standard should apply in article 10 proceedings regardless of whether or not the child resides with the nonrespondent parent (*see also Matter of Sahara K.*, 66 AD3d 1024 [2d Dept 2009]

[where there is evidence that a nonrespondent parent is unable to care for the child and that continued placement in a foster home would serve the child's best interest, Family Court should extend the placement]; *Matter of John KK. v Gerri KK.*, 302 AD2d 811 [3d Dept 2003] [contrary to the father's contention, despite the failure of the Department of Social Services to file an article 10 petition against him, he could be denied custody due to, among other things, unfitness]).

Of course the most critical issue created by *Telsa Z.* is not one of statutory construction but child safety. From the child's safety perspective, *Telsa Z.* leaves the trial court in an extremely difficult situation. If the trial court had followed the directions of the appellate court, Telsa and her sister would be left unprotected in the home of the mother. Certainly, this court fully understands that the appellate courts are just as concerned for child safety as the trial courts. The concern of the appellate court was dramatically made in *Telsa Z.* when, notwithstanding the appellate court's vacating of the trial court's order of disposition, the appellate court temporarily continued the trial court's placement of the children and directed the local Department of Social Services to conduct an investigation pursuant to Family Court Act § 1034.[4] Essentially, the appellate court took the same action that the trial court did (albeit on a temporary basis) despite the fact that no article 10 petition had yet been filed against the mother. The appellate court offered no authority as to how the appellate court could place the children temporarily without the filing of an article 10 petition against the mother on the same facts that the trial court was prohibited from placing the children. Clearly, both the trial court and the appellate court were doing what they could to protect the children in *Telsa Z.* from the failure of the local Department of Social Services to file a petition against the mother.

The appellate court in *Telsa Z.* appears to believe that the safety issue can be adequately addressed by utilizing the provisions of Family Court Act § 1034. The appellate court in *Telsa Z.* stated that once good cause was established, during the dispositional hearing, that the trial court should have directed the local Department of Social Services to investigate, pursuant

---

4. It should be noted that after disposition, but before *Telsa Z.* was decided, the local Department of Social Services changed their position regarding whether or not the children should remain in the care of their mother; however, the local Department had still not filed an article 10 petition against the mother.

to Family Court Act § 1034, to determine whether a petition should be filed naming the mother as a respondent in an article 10 petition. That direction appears to assume that upon the issuance of an order pursuant to Family Court Act § 1034, the local Department of Social Services would file an article 10 petition against the mother. Unfortunately, in this court's experience, that assumption is overly optimistic. There are occasions when the trial court and the local Department of Social Services have a different view as to whether or not the filing of a petition under article 10 is appropriate. Indeed, notwithstanding the rather dramatic facts of *Telsa Z.*, the local Department of Social Services not only did not file against the mother, but advocated that the children be continued in the mother's custody. Thus, there is no reason to believe that the issuance of an order pursuant to Family Court Act § 1034 would have resulted in an article 10 filing against the mother in *Telsa Z.*[5]

In conclusion, this court respectfully suggests that the limitations imposed by *Telsa Z.* be reconsidered so that the court, after making a finding that a child has been neglected or abused upon a full fact-finding hearing, is allowed to issue any statutorily authorized dispositional order which serves the best interest of the child (subject to appellate review like any other dispositional orders).

---

**5.** In *Telsa Z.* the appellate court after discussing the ordering of an investigation pursuant to Family Court Act § 1034 states "in view of the [trial] court's dispositional abuse/neglect finding against her for complicity, the Court's failure to so charge the mother deprived her of a fact-finding hearing." (71 AD3d at 1251.) This court finds the comment regarding the trial court's failure to charge the mother to be confusing. Certainly the court cannot file a petition under article 10 itself naming a parent as a respondent.