[872 NYS2d 569]

ALEX LL., Individually and as Parent and Guardian of ALEX MM., an Infant, Appellant, v DEPARTMENT OF SOCIAL SERVICES OF ALBANY COUNTY et al., Respondents.

Third Department, January 22, 2009

### APPEARANCES OF COUNSEL

*LaFave Law Firm, P.L.L.C.*, Delmar (*Chad A. Jerome* of counsel), for appellant.

*D'Agostino, Krackeler, Baynes & Maguire, P.C.*, Albany (*Mae A. D'Agostino* of counsel), for respondents.

### OPINION OF THE COURT

PETERS, J.P.

This civil rights action stems from plaintiff's half-decade

struggle to gain custody of his son (born in 1995). According to plaintiff, from the time the child was taken into the custody of defendant Department of Social Services of Albany County (hereinafter DSS), DSS, through its caseworkers and supervisors, continuously imposed "frivolous and irrelevant" requirements in order for him to obtain custody of the child, such as drug assessments and screenings, antidrug education programs, mental health evaluations, preventive services and parenting classes, all in the absence of any proof that plaintiff had been an unfit, neglectful or abusive parent in the past or would be in the future. He further asserts that the DSS agenda was at all times tailored toward terminating his parental rights, rather than reuniting him with his child, and that this goal was accomplished by various "illogical loopholes" imposed, repeated requests to Family Court that custody of the child remain with DSS and ultimately the filing of a petition to terminate his parental rights. Plaintiff claims that this conduct, among other things, violated his substantive due process right to raise his child free from unlawful state interference and his son's 4th Amendment right to be free from seizure by government officials. The facts giving rise to these claims are as follows.

In June 1995, the child was placed in the custody of DSS on an emergency basis after Jacqueline NN., the child's mother, left the 18-day-old infant with a casual acquaintance for nine hours and failed to inform the acquaintance of where she was going or leave adequate supplies to care for him. As a result of this incident, as well as the fact that she used cocaine during her pregnancy and the infant had tested positive for cocaine at the time of his birth, DSS commenced a neglect proceeding against the mother. Within days of the filing of the neglect petition, an order of filiation declaring plaintiff to be the biological father of the child was issued, and he filed his first of five petitions seeking custody of the child. A July 6, 1995 order, *entered upon the parties' consent*, granted plaintiff supervised visitation upon the completion of a substance abuse evaluation and required a psychological assessment as well as compliance with a temporary order of protection. On July 10, 1995, the mother appeared before Family Court and admitted neglect of the child. Family Court (Maney, J.) adjudicated the child to be neglected and placed him in the custody of DSS until July 1996.

In the fall of 1995, plaintiff underwent a drug evaluation at Whitney Young FACTS substance abuse program. The FACTS evaluator notified defendant Carol Boyko, a caseworker with DSS, that, although plaintiff's drug screen came back negative,

plaintiff was known to its staff to be a drug user, and recommended that he complete a 12-week substance abuse education program. Thereafter plaintiff was granted weekly supervised visitation with the child for one hour at St. Catherine's Center for Children.

In February 1996, DSS received the results of the court-ordered psychological evaluation of plaintiff and the mother, which raised concerns about plaintiff's ability to parent his child. Specifically, the report indicated that plaintiff failed to protect the child from the mother's drug use during pregnancy and had a minimal understanding and appreciation of parental responsibilities. The evaluator noted that, despite the existence of an order prohibiting unsupervised contact between the child and his mother, plaintiff and the mother were residing together, expecting yet another child and planning on raising their family together.[1] The evaluator expressed concern that if forced to choose between protecting the child from the mother's drug use and maintaining an ongoing relationship with her, plaintiff may choose the latter. Continued placement of the child was recommended, and it was suggested that plaintiff attend parenting classes and counseling.

In April 1996, Boyko sent correspondence to Family Court requesting an extension of the child's placement with DSS. Thereafter, Family Court ordered an extension of the child's placement with DSS until July 1997.[2] By May 1996, plaintiff had successfully completed the recommended parenting classes and progressed to unsupervised visitation with the child. However, because plaintiff had still failed to complete the 12-week substance abuse education program recommended in the initial court-ordered drug evaluation, Boyko required him to participate in a second substance abuse evaluation by FACTS. Following this second evaluation, FACTS staff informed Boyko that plaintiff was "untruthful, defensive and anti-social" and recommended that he attend an anger management program and have a biweekly screening of his urine.

In October 1996, plaintiff declined further services through Parsons Child and Family Center, the preventive services provider recommended by DSS to help reunite him with the child. A discharge summary report prepared by Parsons

---

1. Plaintiff and the mother were also parents of another child who was not in their custody.

2. There is no record evidence of any appearance before Family Court concerning the extension of placement.

expressed concerns about plaintiff's ability and willingness to care for his son, and noted that his deep mistrust of DSS and "the system" prevented any type of relationship with his prevention worker.

In April 1997, plaintiff tested positive for the presence of marihuana. Shortly thereafter, Boyko requested another extension of the child's placement with DSS, informing Family Court that plaintiff's contact with the child would revert from unsupervised to supervised visitation due to plaintiff's known drug use and lack of involvement in a substance abuse treatment program. Thereafter, DSS reported that plaintiff was inconsistent in his visitations with the child.

In July 1997, DSS commenced a proceeding to terminate the mother's parental rights based upon her abandonment of the child. Family Court granted the petition and this Court affirmed (*Matter of Alex MM.*, 260 AD2d 675, 676 [1999]). Plaintiff commenced a second proceeding seeking custody of the child in September 1997, which was dismissed by Family Court for failure to state a cause of action. Plaintiff filed his third petition seeking custody in December 1997, which was dismissed by Family Court because he refused to attend an upcoming intake appointment with Parsons. In March 1998, plaintiff commenced a fourth proceeding seeking custody of the child. This petition was dismissed by Family Court in October 1998, as plaintiff "[did] not [wish] to cooperate with services at St. Catherine's [Center for Children]."

In January 1999, by petition executed by defendant Timothy Kircher, a DSS caseworker, a proceeding to terminate plaintiff's parental rights on the ground that he permanently neglected the child was commenced and, in May 1999, plaintiff filed his fifth petition seeking custody of the child. The following month, by two separate orders of Family Court, plaintiff's parental rights were terminated and his fifth custody petition was dismissed. Upon plaintiff's appeal of those orders, this Court reversed Family Court, dismissed the petition to terminate his parental rights, reversed the order dismissing his custody petition, and remitted the matter for a hearing before a different judge (*Matter of Alex LL. v Albany County Dept. of Social Servs.*, 270 AD2d 523 [2000]). Upon the consent of DSS and with the concurrence of the Law Guardian, plaintiff was granted custody of the child by order entered in May 2000 (*see Matter of Harriet II. v Alex LL.*, 292 AD2d 92, 93 [2002]).

Plaintiff thereafter commenced this action against DSS, Kircher, Boyko, defendant Liz Romeling, who supervised

Kircher and Boyko, defendant Ross A. Prinzo Jr., the Commissioner of Social Services, defendant County of Albany, and other unnamed parties. Following joinder of issue and discovery, defendants moved for, among other things, summary judgment dismissing plaintiff's complaint. In a thorough and well-reasoned decision, Supreme Court, among other things, granted defendants' motion for summary judgment. Plaintiff appeals.

■ Initially, we conclude that Supreme Court properly found that the County, DSS and Prinzo were entitled to summary judgment on plaintiff's 42 USC § 1983 claims. Municipalities and other local government units are "persons" subject to suit under 42 USC § 1983 for the deprivation of constitutionally protected rights (*see Monell v New York City Dept. of Social Servs.*, 436 US 658, 690 [1978]; *Town of Orangetown v Magee*, 88 NY2d 41, 48 [1996]). However, "[l]ocal governmental liability under [42 USC § 1983] cannot be grounded on the doctrine of *respondeat superior*" (*Walden v Wishengrad*, 745 F2d 149, 153 [2d Cir 1984]; *see Monell v New York City Dept. of Social Servs.*, 436 US at 691). Rather, a municipality may only be held liable where "action pursuant to official municipal policy of some nature caused a constitutional tort" (*Monell v New York City Dept. of Social Servs.*, 436 US at 691; *see Pembaur v Cincinnati*, 475 US 469, 477 [1986]; *Town of Orangetown v Magee*, 88 NY2d at 48-49).

According to the affidavits of Romeling and Andrea Burger, the Director of DSS's Office of Children and Family Services, DSS policy, as well as state law, required that DSS work toward preserving the biological family units and reuniting children with their biological parents. Burger further indicated that DSS "provided services to parents toward the goal of assisting [them] in providing a safe and nurturing home [to their] child," which services included "the provision of counseling, classes, supervision and treatment to the parent, and supervised visits leading to unsupervised visits between the parent and child." Based upon these submissions, defendants sufficiently demonstrated the absence of any official municipal policy or custom that caused a violation of plaintiff's constitutional right to raise his child free from unlawful state interference (*see Monell v New York City Dept. of Social Servs.*, 436 US at 691; *Town of Orangetown v Magee*, 88 NY2d at 48-49; *Matter of Ken Mar Dev., Inc. v Department of Pub. Works of City of Saratoga Springs*, 53 AD3d 1020, 1023-1024 [2008]), thereby shifting the burden to plaintiff to provide competent evidence raising a genuine issue

of fact (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Card v Brown*, 43 AD3d 594, 595 [2007]). This plaintiff failed to do.

Although plaintiff asserts that "[t]he 'policy' [of DSS] is to make parents . . . undergo testing, evaluations, supervised visits and treatment with no indication that there is a problem, nor that the child is at risk," he fails to identify any incident, other than that which allegedly occurred here, that demonstrates the existence of any such policy or a practice by DSS or the County of unlawfully interfering with a parent's constitutional right to raise his or her child. Notably, proof of a single incident of unconstitutional activity is insufficient to establish the existence of a municipal policy or custom in the absence of any wrong that can be ascribed to municipal decisionmakers (*see Oklahoma City v Tuttle*, 471 US 808, 823-824 [1985]; *Fiacco v City of Rensselaer, N.Y.*, 783 F2d 319, 328 [2d Cir 1986], *cert denied* 480 US 922 [1987]; *Simpson v New York City Tr. Auth.*, 112 AD2d 89, 91 [1985], *affd* 66 NY2d 1010 [1985]). As such, the complaint against the County, DSS and Prinzo was properly dismissed.[3]

We next address plaintiff's contention that Supreme Court erroneously found that Romeling and Boyko were entitled to absolute immunity for their role in initiating and prosecuting the placement and termination of parental rights proceedings.[4] Absolute immunity has been accorded to a state prosecutor in a 42 USC § 1983 action for his or her conduct "in initiating a prosecution and in presenting the [s]tate's case" (*Imbler v Pachtman*, 424 US 409, 431 [1976]; *see Walden v Wishengrad*, 745 F2d at 151), and the United States Supreme Court has instructed that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts" (*Butz v Economou*, 438 US 478, 515 [1978]; *see Harlow v Fitzgerald*, 457 US 800, 807 [1982]). As such, absolute immunity has been extended to the conduct of government officials in initiating and prose-

---

**3.** Supreme Court also dismissed plaintiff's claim that the County, DSS and Prinzo failed to properly train and supervise DSS caseworkers. Inasmuch as plaintiff does not address the dismissal of this claim in his brief, any challenge thereto has been abandoned (*see Vitvitsky v Heim*, 52 AD3d 1103, 1104 n [2008]).

**4.** Although Kircher was involved in the petition to terminate plaintiff's parental rights, Supreme Court dismissed the complaint as against him due to plaintiff's failure to properly serve him.

cuting child protective proceedings (*see Walden v Wishengrad*, 745 F2d at 152-153).

■ During the relevant time period, and while under the supervision of Romeling, Boyko requested continued placement of the child with DSS, and Kircher petitioned for termination of plaintiff's parental rights.[5] Their responsibility in this arena was similar to the function of a criminal prosecutor (*see Walden v Wishengrad*, 745 F2d at 152; *see also Whelehan v Monroe County*, 558 F Supp 1093, 1098 [WD NY 1983]). Moreover, in light of the substantial responsibility of DSS's foster care unit, its caseworkers and supervisors "must be allowed to perform [their] duties free from fear of potential lawsuits by individuals allegedly harmed by [their] actions" (*Walden v Wishengrad*, 745 F2d at 152; *see Coverdell v Department of Social & Health Servs., State of Wash.*, 834 F2d 758, 763-764 [9th Cir 1987]). Indeed, absolute immunity is particularly warranted here because judicial review of their acts, when properly conducted, serves as a safeguard to control unconstitutional conduct (*see Burns v Reed*, 500 US 478, 492 [1991]; *Butz v Economou*, 438 US at 512). For these reasons, Supreme Court properly determined that Romeling and Boyko were entitled to absolute immunity for their role in initiating and prosecuting the placement and termination of parental rights proceedings.

■ Next, we agree with Supreme Court's determination that Romeling and Boyko were entitled to absolute immunity with respect to their conduct in requiring plaintiff to complete a substance abuse evaluation and psychological assessment in accordance with Family Court's July 1995 order. Having consented to that order, plaintiff is not aggrieved (*see Matter of Elijah Q.*, 36 AD3d 974, 975 [2007], *lv denied* 8 NY3d 809 [2007]) and, notwithstanding his current assertion that his consent was not voluntarily given, at no time did he move to vacate the order on this basis (*see* Family Ct Act § 1051 [f]; § 1061; *Matter of Fantasia Y.*, 45 AD3d 1215, 1216 [2007]). In any event, agency officials are absolutely immune for actions taken to carry out facially valid court orders (*see Bush v Rauch*, 38 F3d 842, 847 [6th Cir 1994]; *Coverdell v Department of Social & Health Servs., State of Wash.*, 834 F2d at 764-765).

We now turn to the question of whether Romeling and Boyko are entitled to qualified immunity with respect to their conduct

5. Notably, neither Romeling nor Boyko had any involvement with the initial neglect proceeding that resulted in placement of the child in DSS custody. Additionally, Boyko was not involved in all of the extension applications.

in (1) requiring plaintiff to obtain evaluations and participate in preventive service programs, (2) making evidentiary submissions and recommendations to Family Court, and (3) limiting plaintiff's visitation with the child. Qualified immunity protects government officials from liability for damages when performing discretionary duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (*Harlow v Fitzgerald*, 457 US at 818; *see van Emrik v Chemung County Dept. of Social Servs.*, 911 F2d 863, 865-866 [2d Cir 1990]).

> "The two parts of this inquiry are whether plaintiff suffered a constitutional violation at the hands of [Romeling or Boyko] and, if so, whether the constitutional right was clearly established at the time so that any reasonable [caseworker] would clearly recognize that his or her conduct was unlawful in that situation" (*Colao v Mills*, 39 AD3d 1048, 1050 [2007] [citation omitted]; *see Saucier v Katz*, 533 US 194, 201-202 [2001]).

While Romeling and Boyko may have violated a constitutional right of plaintiff, namely, the fundamental liberty interest of a parent in the care and custody of his or her child (*see Santosky v Kramer*, 455 US 745, 753 [1982]; *United States v Myers*, 426 F3d 117, 125 [2d Cir 2005]; *Kia P. v McIntyre*, 235 F3d 749, 758 [2d Cir 2000], *cert denied* 534 US 820 [2001]), the fact that it is clearly established in a general sense " 'that a parent's interest *in the custody of a child [is] a constitutionally protected liberty* interest subject to due process protection' " (*Wilkinson ex rel. Wilkinson v Russell*, 182 F3d 89, 103 [2d Cir 1999], *cert denied* 528 US 1155 [2000], quoting *Cecere v City of New York*, 967 F2d 826, 829 [2d Cir 1992]; *see Santosky v Kramer*, 455 US at 753) does not end our inquiry. Rather, " ' "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right" ' " (*Brosseau v Haugen*, 543 US 194, 198-199 [2004], quoting *Anderson v Creighton*, 483 US 635, 640 [1987]). Thus, the salient question is whether the state of the law put Boyko and Romeling on notice that their conduct was clearly unconstitutional (*see Hope v Pelzer*, 536 US 730, 741 [2002]; *Saucier v Katz*, 533 US at 202).

■ While it was clearly established during the relevant time period that "a parent has 'a right to the care and custody of a

child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood' '' (*Matter of Male Infant L.*, 61 NY2d 420, 426 [1984], quoting *People ex rel. Kropp v Shepsky*, 305 NY 465, 468 [1953]), the law also obliged DSS to make diligent efforts to encourage and strengthen the parental relationship and assist the parent in planning for the future of the child in foster care, in an ultimate effort to reunite the child with his or her family (*see* Social Services Law § 384-b [7] [a]; *Matter of Sheila G.*, 61 NY2d 368, 385-386 [1984]; *Matter of Jessica UU.*, 174 AD2d 98, 100 [1992]). In our view, it was objectively reasonable for Boyko and Romeling to believe that their conduct was lawful under the circumstances they confronted.

As previously stated, Romeling and Boyko are entitled to absolute immunity for their conduct in carrying out Family Court's July 1995 order, which required plaintiff to attend the initial substance abuse evaluation and psychological assessment conducted by persons not employed by DSS. Although plaintiff challenges the accuracy of the information contained in the drug evaluation, a reasonable caseworker would not have known that such information was unreliable. Similarly, we cannot conclude that a reasonable caseworker would have known that he or she would violate plaintiff's constitutional right to custody of his child by acting on the recommendations of the court-ordered psychological evaluation.

Perhaps best put by Supreme Court, what followed was a "spiral," with plaintiff's "pattern of less than full compliance with the program recommendations of the court-ordered evaluators [becoming] the basis for additional evaluations [and] program requirements and, ultimately, the continued denial of his custody petitions." Additionally, the neutral party evaluators and service providers revealed that plaintiff was not truthful regarding his prior drug use, left a drug treatment facility when asked to provide a second urine sample, failed a drug test after vigorously protesting that he did not use drugs, discontinued court-ordered preventive services and failed to regularly attend supervised visitation with the child. Furthermore, during a period in which he had supervised visitation with his son and was asserting his right to custody, plaintiff maintained a relationship with the child's mother, who was subject to an order of protection prohibiting her from having unsupervised contact with the child. Considering this information, we are unable to conclude that the conduct of Boyko, as supervised by Romeling,

in requiring plaintiff to obtain evaluations and participate in preventive service programs "was so flawed that no reasonable [caseworker] would have made a similar choice" (*Lennon v Miller*, 66 F3d 416, 425 [2d Cir 1995]; *accord Colao v Mills*, 39 AD3d at 1052).

Based upon these same considerations, we find that Boyko and Romeling are entitled to qualified immunity with regard to their submissions and recommendations to Family Court and their decisions regarding visitation, which were based primarily on the recommendations of third-party evaluators and the failure of plaintiff to obtain and/or complete the recommended services. Similarly, the evidentiary submissions contained in the petition to terminate plaintiff's parental rights were also based in large part upon such recommendations and compliance failure on the part of plaintiff. Although we sympathize with the torturous course of events endured by plaintiff, and certainly do not in any way minimize plaintiff's constitutionally protected interest in the custody and care of his child, this interest must always be " 'counterbalanced by the compelling governmental interest in the protection of minor children' " (*United States v Myers*, 426 F3d at 125, quoting *Wilkinson ex rel. Wilkinson v Russell*, 182 F3d at 104; *see Kia P. v McIntyre*, 235 F3d at 758). Given the unanimity of service providers opposed to plaintiff receiving custody of his son, as well as plaintiff's failure to obtain and/or satisfactorily complete the recommended services, Boyko and Romeling were required "to choose between difficult alternatives," and "[i]t is precisely the function of qualified immunity to protect state officials in choosing between such alternatives, provided that there is an objectively reasonable basis for their decision, whichever way they make it" (*van Emrik v Chemung County Dept. of Social Servs.*, 911 F2d at 866; *Tenenbaum v Williams*, 193 F3d 581, 596 [2d Cir 1999], *cert denied sub nom. City of New York v Tenenbaum*, 529 US 1098 [2000]). Mindful of "the importance of the defense of qualified immunity to insure that publicly employed caseworkers have adequate latitude to exercise their professional judgment in matters of child welfare" (*Defore v Premore*, 86 F3d 48, 50 [2d Cir 1996]; *see van Emrik v Chemung County Dept. of Social Servs.*, 911 F2d at 866), we cannot say that a reasonable caseworker would necessarily understand that he or she would be violating plaintiff's familial rights by restricting visitation under these circumstances and insisting that plaintiff obtain the prescribed evaluations and service requirements prior to

recommending that he get custody, particularly in light of the fact that the record is bereft of evidence that plaintiff's counsel or the Law Guardian challenged these circumscriptions. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued" (*Hunter v Bryant*, 502 US 224, 229 [1991] [internal quotation marks and citations omitted]; *accord Colao v Mills*, 39 AD3d at 1052). Thus, Boyko and Romeling are entitled to qualified immunity for their conduct in this regard.

■ Finally, Supreme Court properly awarded summary judgment in favor of Boyko and Romeling on plaintiff's 4th Amendment claim. While it has been held that "the [4th] Amendment applies in the context of the seizure of a child by a government-agency official during a civil child-abuse or maltreatment investigation" (*Kia P. v McIntyre*, 235 F3d at 762; *see Nicholson v Scoppetta*, 344 F3d 154, 172 [2003]; *Tenenbaum v Williams*, 193 F3d at 605), those cases involve children who were in the legal custody of their parents at the time of the alleged seizure. Because plaintiff's 4th Amendment claim is not premised upon the initial seizure of his son but, rather, the child's continued retention in foster care pursuant to the consecutive orders of Family Court, it was properly dismissed (*see A.C. v Mattingly*, 2007 WL 894268, *6, 2007 US Dist LEXIS 20007, *16-17 [SD NY 2007]).

Rose, Lahtinen, Kavanagh and Stein, JJ., concur.

Ordered that the order is affirmed, without costs.