OPINION OF THE COURT
William J. Giacomo, J.
Factual and Procedural Background
In 2005 Diana G-D started third grade at the Bedford Hills Elementary School in Bedford, New York. At that time, she lived in a home with her mother, Ann D., her two-year-old stepbrother E. and her stepfather defendant Cesar Joel Sagastume Morales.[2] At the beginning of third grade Diana G-D was quiet and shy as observed by her teachers. Her teachers attributed this uncertainty in school to her transition from her native culture and language to the English language and environment *972 at school. As the school year progressed, her teachers noted positive changes in her developing language skills and overall self-confidence.
At a regular parent-teacher conference in the fall of 2005, Ann D. met with two of Diana G-D’s third-grade teachers. Ann D. allegedly asked the teachers if Diana G-D was behaving properly at school. The teachers told her that Diana G-D was a very well behaved child. Ann D. claims that she told the teachers during this conference that at times Diana G-D seemed sad at home and would often misbehave. The teachers told her that was not how Diana G-D behaved at school.
During the first week of December 2005, Mrs. D., the mother of another third grader at the Bedford Hills Elementary School, came to school to speak with the principal, defendant Victoria Graboski. Ms. Graboski was not there so Mrs. D. spoke with acting principal Regina Smith. Mrs. D. told Ms. Smith that her daughter had overheard a conversation at a slumber party concerning Diana G-D. Mrs. D. told Ms. Smith that her daughter told her that several other third graders discussed a conversation Diana G-D had with another third grader on the school playground during recess. Mrs. D. told Ms. Smith that apparently during the conversation on the school playground, Diana G-D told a friend that she was having sex “with her father.”
The next day, Ms. Graboski called Mrs. D. to speak with her directly. Ms. Graboski then spoke to Diana G-D’s teachers about her and learned from them that Diana G-D appeared to be a happy child who was developing and growing as a third grader. She was told that Diana G-D had not demonstrated any problems in the classroom. Ms. Graboski then asked Diana G-D’s teachers to speak privately with Diana G-D to learn if she had been at the slumber party the prior weekend and to ascertain how she was feeling and doing at home.
Thereafter, Diana G-D’s teachers met with her in a school conference room and had a casual conversation with her. Diana G-D told her teachers that she had not been at the slumber party. The teachers then asked her how she was feeling and if everything was well at home. Diana G-D seemed happy and she said that everything was fine at home. The teachers did not ask Diana G-D about the conversation which allegedly took place on the playground. Diana G-D’s teachers reported their discussion with Diana G-D to Ms. Graboski and the school took no further action.
*973 On August 17, 2006, Ann D. came home from shopping and found the cell phone of her boyfriend Cesar Joel Sagastume Morales on the couch. Ann D. was jealous because Sagastume Morales had other girlfriends so she decided to look at his cell phone. According to Ann D., Sagastume Morales’s cell phone contained pictures of Diana G-D which Ann D. believed were inappropriate. When Ann D. asked Diana G-D about the pictures, Diana G-D allegedly told her that Sagastume Morales had been “touching” her in an inappropriate way. When Ann D. confronted Sagastume Morales, he immediately left the house.
Ann D. called the police and turned the cell phone over to them. Sagastume Morales fled to Guatemala. After several years, Sagastume Morales was arrested in Guatemala and extradited to New York. He eventually pleaded guilty to sexual misconduct against a child and was sentenced to eight years in prison. He is currently serving his sentence in the Coxsackie Correctional Facility in Ulster County.
Diana G-D, through Ann D., commenced this action in the spring of 2007. She alleges that Diana G-D was sexually abused in her home, from December 2005 to August 2006, by Cesar Joel Sagastume Morales. She also alleges that the Bedford Central School District, Victoria Graboski (former principal of Bedford Hills Elementary School) and defendant Kelly Cieslinski-Schleuter (former school psychologist for Bedford Hills Elementary School) were negligent in failing to report the suspected abuse as required by Social Services Law § 413.
Ms. Graboski commenced a third-party action against Sagastume Morales on January 6, 2010, and served him with the summons and complaint on January 29, 2010. The School District commenced a second third-party action against Sagastume Morales on December 23, 2009 and served him with the summons and complaint on January 29, 2010.
Sagastume Morales has neither appeared nor answered.
By order dated September 27, 2010 and entered September 28, 2010, this court granted plaintiff’s unopposed motion to amend her complaint to add Sagastume Morales as a necessary party in her action and granted Ms. Graboski’s and the School District’s unopposed motions to enter a default judgment against Sagastume Morales.
The School District’s Motion for Summary Judgment
The School District now moves for summary judgment dismissing the complaint.
*974 In support of its motion, the School District argues that at no time during the 2005/2006 school year did either Diana G-D or Ann D. report to the school that Diana G-D was being sexually abused. The School District notes that at her deposition, Diana G-D testified that she never told her mother about what Sagastume Morales was doing with her. Diana G-D testified that she was afraid to report the sexual touching because Sagastume Morales told her he would kill Ann D. if she revealed the touching. Diana G-D also testified that she never told her teachers about the sexual activity. Diana G-D did, however, tell several of her third-grade friends about the sexual activity with Sagastume Morales. However, Diana G-D told her friends not to tell anyone.
The School District also relies on the deposition testimony of plaintiff Ann D. At her deposition, Ann D. testified that she did not learn of the sexual abuse until August 17, 2006. It was at that time that she also learned that Diana G-D had told her friends about the sexual abuse. Ann D. also testified that Diana G-D never told her that her teachers spoke to her and asked Diana G-D if something was making her sad and whether anything was happening at home.
The School District notes that Ann D. never discussed with the school Sagastume Morales’s role in the family while Diana G-D was in third grade and she never contacted any parents of Diana G-D’s friends regarding Sagastume Morales’s behavior. She testified that when Diana G-D was unhappy and not eating while in third grade, she took her to a pediatrician at the Open Door Clinic in Mount Kisco. According to Ann D., the doctor examined Diana G-D and told Ann D. that everything was fine.
The School District also relies on the deposition testimony of Mrs. D. At her deposition, Mrs. D. testified that when she went to the school to discuss what her daughter had overheard at the slumber party, she did not know if the story was true. Mrs. D. did not call the police or Diana G-D’s mother because she was not sure that the matter was “real.”
At her deposition, school employee Regina Smith testified that she found Mrs. D.’s story about the conversation during the slumber party confusing and did not know if it was credible.
The School District also relies on the deposition testimony of Victoria Graboski. Ms. Graboski testified that after discussing the matter with Regina Smith and Mrs. D., she spoke with school psychologist Kelly Cieslinski-Schleuter. Ms. Graboski told Ms. Cieslinski-Schleuter that this information was received *975 “fourth hand.” She also told Ms. Cieslinski-Schleuter that Diana G-D had not demonstrated any problems in the classroom. Ms. Graboski testified that in dealing with these allegations, she was also concerned that prejudice against Hispanic families might have “factored into” the allegations of sexual misconduct.
Ms. Graboski also testified that she asked Diana G-D’s teachers to talk to Diana G-D about the slumber party and to ask her if everything was okay at home. The teachers reported back to her that Diana G-D had not been at the slumber party and that she told them that everything was fine at home.
The Argument of the School District
The School District argues that plaintiffs complaint must be dismissed because, pursuant to Social Services Law § 413, it had no duty to report the allegation of suspected child abuse of Diana G-D.
Social Services Law § 413, “Persons and officials required to report cases of suspected child abuse or maltreatment,” provides in relevant part:
“1. (a) The following persons and officials are required to report or cause a report to be made in accordance with this title when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child, or when they have reasonable cause to suspect that a child is an abused or maltreated child where the parent, guardian, custodian or other person legally responsible for such child comes before them in their professional or official capacity and states from personal knowledge facts, conditions or circumstances which, if correct, would render the child an abused or maltreated child-, any physician; registered physician assistant; surgeon; medical examiner; coroner; dentist; dental hygienist; osteopath; optometrist; chiropractor; podiatrist; resident; intern; psychologist; registered nurse; social worker; emergency medical technician; licensed creative arts therapist; licensed marriage and family therapist; licensed mental health counselor; licensed psychoanalyst; hospital personnel engaged in the admission, examination, care or treatment of persons; a Christian Science practitioner; school official, which includes but is not limited to school teacher, school guidance counselor, school psychologist, school social worker, school *976 nurse, school administrator or other school personnel required to hold a teaching or administrative license or certifícate; social services worker; director of a children’s overnight camp, summer day camp or traveling summer day camp, as such camps are defined in section thirteen hundred ninety-two of the public health law; day care center worker; school-age child care worker; provider of family or group family day care; employee or volunteer in a residential care facility defined in subdivision four of section four hundred twelve-a of this title or any other child care or foster care worker; mental health professional; substance abuse counselor; alcoholism counselor; all persons credentialed by the office of alcoholism and substance abuse services; peace officer; police officer; district attorney or assistant district attorney; investigator employed in the office of a district attorney; or other law enforcement official.
“(b) Whenever such person is required to report under this title in his or her capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, he or she shall make the report as required by this title and immediately notify the person in charge of such institution, school, facility or agency, or his or her designated agent. Such person in charge, or the designated agent of such person, shall be responsible for all subsequent administration necessitated by the report. Any report shall include the name, title and contact information for every staff person of the institution who is believed to have direct knowledge of the allegations in the report. Nothing in this section or title is intended to require more than one report from any such institution, school or agency.” (Emphasis supplied.)
In addition, Social Services Law § 419, “Immunity from liability,” provides:
“Any person, official, or institution participating in good faith in the providing of a service pursuant to section four hundred twenty-four of this title, the making of a report, the taking of photographs, the removal or keeping of a child pursuant to this title, or the disclosure of child protective services information in compliance with sections twenty, four *977 hundred twenty-two and four hundred twenty-two-a of this chapter shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions. For the purpose of any proceeding, civil or criminal, the good faith of any such person, official, or institution required to report cases of child abuse or maltreatment or providing a service pursuant to section four hundred twenty-four or the disclosure of child protective services information in compliance with sections twenty, four hundred twenty-two and four hundred twenty-two-a of this chapter shall be presumed, provided such person, official or institution was acting in discharge of their duties and within the scope of their employment, and that such liability did not result from the willful misconduct or gross negligence of such person, official or institution.”
However, Social Services Law § 420, provides as follows:
“Penalties for failure to report “1. Any person, official or institution required by this title to report a case of suspected child abuse or maltreatment who willfully fails to do so shall be guilty of a class A misdemeanor.
“2. Amy person, official or institution required by this title to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure.” (Emphasis supplied.)
The School District asserts that pursuant to Social Services Law § 413 there are two circumstances where a “designated person,” such as a school employee, is required to report allegations of suspected child abuse. The first arises when designated persons have “reasonable cause” to suspect that a “child coming before them” is abused. The second arises when designated persons have reasonable cause to suspect a child is abused when the person coming before them and reporting the abuse is a parent or guardian or person in charge of the minor.
The School District argues that the facts of this case cannot trigger the first circumstance for reporting because Diana G-D was not “a child coming before” it as defined by statute. Furthermore, during the period in question the behavior and appearance of Diana G-D while at school gave it no reason to suspect she was being abused. With respect to the second trigger for mandatory reporting, the School District argues that the *978 person providing the report of alleged sexual abuse was Mrs. D., who was not a parent, guardian or person in charge of Diana G-D. Therefore, according to the School District, neither trigger for mandatory reporting is present in this case. Accordingly, it cannot be held liable for failure to report the alleged abuse.
The School District also argues that even if it had a duty to report and failed to report the alleged abuse in this case, it can only be held liable, pursuant to Social Services Law § 420, if it “knowingly and willfully” failed to report the alleged abuse. Further, even if the School District knowingly and willfully failed to report the alleged abuse, it is only liable for damages proximately caused by its failure to report the abuse.
The School District notes that it did not ignore the allegations made by Mrs. D. Rather, it immediately investigated the complaint by discussing the allegations with Diana G-D’s teachers and requesting that they meet with her and ask Diana G-D if she was okay and if there was anything wrong at home. When Diana G-D replied that she was fine and nothing was wrong at home, the School District argues that it complied with its statutory obligation with regard to this “thirdhand” report of abuse.
Finally, the School District argues that there is no evidence that any failure to report the alleged abuse of Diana G-D was the proximate cause of her injuries since there is no proof regarding when the alleged abuse took place.
Defendant Cieslinski-Schleuter’s Motion for Summary Judgment
Defendant Kelly Cieslinski-Schleuter also moves for summary judgment. In support of her motion, Ms. Cieslinski-Schleuter argues that pursuant to Social Services Law § 413, she is not required to report thirdhand allegations of abuse from the mother of another third grader. Ms. Cieslinski-Schleuter argues that pursuant to Social Services Law § 413 (1) (a) school employees are required to report abuse when they have reasonable cause to suspect that a “child coming before them” has been abused or “where the parent, guardian, custodian or other person legally responsible for such child comes before them in their professional or official capacity and states from personal knowledge facts, conditions or circumstances which, if correct, would render the child an abused or maltreated child.”
According to Ms. Cieslinski-Schleuter, she never spoke to Diana G-D. Therefore, Diana G-D was not “a child coming before” her. Further, Ms. Cieslinski-Schleuter notes that the only report of abuse was from Mrs. D., who is not the parent, guardian, *979 custodian or person legally responsible for Diana G-D. There is no dispute that Mrs. D. did not have personal knowledge of any of the information she supplied to the school.
Ms. Cieslinski-Schleuter argues further that, even if she had a duty to report what Mrs. D. had told Regina Smith and Ms. Graboski, she can only be held liable for any damages the failure to report caused, under Social Services Law § 420 (2), if she knowingly and willfully failed to make the appropriate report. However, there is no evidence that she knowingly and willfully failed to report any alleged abuse of Diana G-D. As Ms. Cieslinski-Schleuter previously argued, Diana G-D did not come before her and the report of the alleged abuse did not come from one of the enumerated people with personal knowledge as set forth in Social Services Law § 413. Accordingly, Ms. Cieslinski-Schleuter seeks summary judgment dismissing the complaint against her.
Defendant Graboski’s Motion for Summary Judgment
Ms. Graboski also moves for summary judgment dismissing the complaint and all cross claims asserted against her. In support of her motion, Ms. Graboski argues that she did not breach her statutory duty to report suspected child abuse under Social Services Law §§ 413 and 420. Further, any failure to report suspected child abuse was not knowing or willful as required pursuant to Social Services Law § 420. Finally, Ms. Graboski argues that she had no common-law duty to report any suspected child abuse.
Plaintiffs Combined Opposition to All Three Motions
In opposition to these motions, plaintiff submits an 82-page “affirmation in opposition” which far exceeds the 25-page limit for affirmations and affidavits set forth in this court’s part’s rules. Generally, the court will not consider such an affidavit, or the supporting exhibits. (See Macias v City of Yonkers, 65 AD3d 1298 [2d Dept 2009].) However, in view of the highly sensitive nature of this case the court will make an exception to this rule.
Plaintiff argues in opposition that defendants were mandated to report any and all allegations of suspected sexual abuse because Diana G-D was “a child coming before them.” Plaintiff acknowledges that there are two triggers for mandatory reporting.[3] The first is when a designated reporter has reasonable cause to believe that a child coming before it is being abused. *980 Plaintiff argues that Diana G-D, as a third-grade student of the School District, unquestionably came before teachers, administrators and other school personnel daily. Therefore, Diana G-D came before several of the enumerated designated persons set forth in Social Services Law § 413. In addition, plaintiff claims that since Ann D. informed the school of her concern regarding her daughter’s behavior at home and Mrs. D. told administrators of the overheard conversation, the defendants had reasonable cause to suspect that Diana G-D as “a child coming before them” who was being abused.
In support of her position, plaintiff submits the affidavit of Dr. Helen Abramowicz, a consulting psychiatrist, who avers that the concerns expressed by Ann D. at the parent-teacher conference coupled with Mrs. D.’s report constitute “reasonable cause” to suspect that Diana G-D was being abused.
Plaintiff also argues that the defendants’ failure to report the alleged abuse was knowing and willful. In support of this argument, plaintiff notes that the reason why Ms. Graboski did not report the alleged abuse of Diana G-D was that there was discord between American and Latino families, especially in the third-grade class where there was a disproportionate number of Latino families. Plaintiff claims that at her deposition, Ms. Graboski testified that in view of this discord she was concerned about the veracity of a story told by white children at a slumber party about a Latino girl who was not at the slumber party. Plaintiff claims that this testimony establishes that there is a question of fact regarding whether the failure to report the alleged abuse was knowing and willful.
With respect to the issue of proximate cause, plaintiff argues that defendants have not produced evidence to establish that their inaction was not the proximate cause of plaintiffs injuries. Discussion
Since plaintiff has acknowledged that, pursuant to Social Services Law § 413, the second trigger for mandatory reporting is not applicable here, the court will analyze only the first trigger in connection with the legal issues raised by these motions. As discussed, the first trigger for mandatory reporting is when a child coming before a “designated person” as defined by the statute has reasonable cause to suspect that the child is being abused.
*981 The defendants’ first argument is that Diana G-D was not a “child coming before” them. Defendants argue that the meaning of the phrase “coming before” should not be given an overly broad meaning. Rather, they contend that the phrase contemplates a physical action on the part of the child, i.e., the child physically appears or acts in a manner which suggests abuse or the child herself reports the abuse to a mandatory reporter. Defendants argue that Diana G-D did not “come[ ] before” them reporting abuse at home, nor did Diana G-D appear to be physically abused.
Additionally, defendants argue that they had no reason to suspect Diana G-D was being abused because, even if she was “a child coming before” them, she appeared happy, well behaved and was progressing nicely at school. According to defendants, she was not acting in a manner which gave them any indication that she was being sexually abused. She was not acting out in a sexually inappropriate way and she was not saying things to teachers which would indicate sexual abuse. Thus, they assert that they had no duty to report any alleged abuse, especially considering the report came from Mrs. D., a third-party source who had no personal knowledge of any sexual abuse. Finally, when defendants inquired directly of Diana G-D whether anything was happening at home, Diana G-D stated that everything was fine.
Plaintiff disagrees. First, she argues that as a student of the School District Diana G-D was clearly a “child coming before” the defendants. Further, she argues that in view of Ann D.’s concerns about Diana G-D’s behavior at home and with Mrs. D.’s report of statements her daughter overheard when other children were discussing statements allegedly made by Diana G-D about sex with her father, there was “reasonable cause” to suspect abuse.
The Statute at Issue
In deciding these motions, the court must first review the statutes in question and how they impact the facts of this case.
The first place the court will turn is the legislative history of Social Services Law § 413 to determine what the legislature intended with respect to the provision which mandates reporting when mandatory reporters have “reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child.” (Social Services Law § 413 [1] [a].)
A review of the legislative history does not provide guidance for interpreting the term a “child coming before” a mandatory *982 reporter. Therefore, as discussed below, the court will review the relevant case law to define this term.
Laws of 1973, chapter 1039 indicates that the legislative intent of Social Services Law § 413 is “providing procedures for reporting the abuse or maltreatment of children, providing immediate access to the central register on child abuse, investigating such reports, and for taking protective action.”
According to a June 4, 1973 memorandum from the Department of Social Services in support of Assembly Bill 6514A, which includes enactment of Social Services Law § 413, the Department of Social Services believed that the law is intended to address the issue of “the difficulty in obtaining an accurate measure of the [child abuse] problem.” It believed there were more instances of child abuse than reported. The objective of the new legislation was to accurately report such abuse. (Bill Jacket, L 1973, ch 1039, at 8.)
However, in a May 24, 1973 letter from the Hospital Association of New York State in support of Assembly Bill 6514A, the Association expressed reservations concerning “imposing civil liability for the damages proximately caused by failure to report suspected cases of child abuse.” The Association stated, “We are fearful lest frivolous and unnecessary litigation be initiated against hospitals and their personnel.” (Bill Jacket, L 1973, ch 1039, at 38.)
Furthermore, in an April 26, 1973 memorandum from the Department of Public Affairs Community Service Society of New York, the Society expressed concern that “[t]he provisions affecting persons and officials required to report cases of suspected child abuse should be clarified and tightened. First, there should be reasonable cause to suspect imminent danger of abuse, not just danger.” (Bill Jacket, L 1973, ch 1039, at 49.)
Moreover, according to a June 14, 1973 memorandum from the State Division of Criminal Justice Services not supporting Assembly Bill 6514A, the Division did not support Social Services Law § 420 holding mandatory reporters criminally liable for failure to report under Social Services Law § 413, stating, “it may . . . result in the filing of many unfounded reports of abuse or mistreatment” out of fear. (Bill Jacket, L 1973, ch 1039, at 14.) The Division claimed that this would result in needlessly disrupting families and creating a record of abuse in the registry where there in fact was no abuse or maltreatment. (Id.)
*983 A review of this legislative history discloses that it is clear the intent of Social Services Law § 413 et seq. to encourage the reporting of suspected child abuse. However, it is also clear that there was a concern about the filing of unfounded reports as well as a concern regarding an overbroad interpretation of the term “reasonable cause” as set forth in the statute.
The court will next review and analyze case law interpreting Social Services Law § 413 et seq. Although this court could not find a case which specifically defines “a child coming before” and “reasonable cause” under the statute, the facts of relevant cases provide a guideline for how this language is to be interpreted.
In Biondo v Ossining Union Free School Dist. (66 AD3d 725 [2d Dept 2009]), the Appellate Division affirmed the denial of defendants’ motion to dismiss the complaint based upon the immunity granted pursuant to Social Services Law § 419, finding that there were issues of fact regarding whether defendants had reasonable cause to report suspected child abuse, ultimately deemed unfounded by Child Protective Services. In Biondo, a school district employee reported suspected abuse when she observed the mother slap her son’s hand so hard it left a red mark. Further, the employee claimed that the mother seemed irritable and angry and was physically aggressive with her son during the class. Although the procedural posture of Biondo is different than this case, it is relevant that the employee in Biondo actually observed the behavior which formed the basis for suspecting abuse and filing the report. Here, the defendants did not observe anything that caused them to suspect that Diana G-D was being abused.
In Kempster v Child Protective Servs. of Dept. of Social Servs. of County of Suffolk (130 AD2d 623 [2d Dept 1987]), the Appellate Division granted summary judgment to the defendant hospital finding that it had immunity pursuant to Social Services Law § 419. In Kempster, the infant plaintiff, who was approximately 14 months old, was brought to the emergency room of the defendant hospital because of swelling of her nose. The child’s mother advised a hospital employee that the infant had fallen after tripping over the leg of a kitchen chair two days previously. The defendant hospital proceeded to take X rays of the infant’s head, nasal area and wrists. These X rays revealed a partially healed fracture of the child’s right wrist, for which the mother was unable to provide an explanation. A physical examination of the child further disclosed that she suffered from
*984 abrasions on various parts of her body, which appeared to have been sustained on diverse occasions. Kempster is also procedurally different than this case. Notably, a plaintiff in Kempster was the mother accused of abusing the infant. However, it is important to note that the report of abuse was based upon direct observations made by the nurse. (Cf. Miriam P. v City of New York, 163 AD2d 39 [1st Dept 1990] [defendant hospital entitled to immunity for reporting suspected child abuse when the mother could not explain injuries to the thigh and hip of a child who was congenitally blind, mentally retarded and hydrocephalic and had had a cerebral shunt inserted shortly after her birth]; Isabelle V. v City of New York, 150 AD2d 312 [1st Dept 1989] [although two cousins ages three and seven who lived in the same household denied being sexually abused in the home, their unexplained vaginal discharge and the seven year old’s appearance of being very frightened provided a reasonable basis to report suspected child abuse, despite the fact that the suspicion of abuse was ultimately determined to be unfounded].)
In Rine v Chase (309 AD2d 796 [2d Dept 2003]), the Appellate Division affirmed the dismissal of an action brought by a father against a social worker for reporting suspected child abuse based upon statements made by the children during therapy sessions with the social worker. Again, the report of the suspected abuse was based upon the statements made directly from the children not, as here, from a third party.
In Matter of Kimberly S.M. v Bradford Cent. School (226 AD2d 85 [4th Dept 1996]), the Appellate Division denied defendant school’s motion for summary judgment finding that it had a duty to report suspected abuse where the abuse victim reported to her social studies teacher that she was being sexually abused by her uncle during summer vacations at his home. Again, the report of abuse, which the social studies teacher failed to make, was based upon statements made by the victim to a designated reporter.
Based upon this court’s analysis of the foregoing, it finds that a “child coming before” a designated reporter must reveal facts which provide a designated reporter with reasonable cause to suspect abuse to trigger the reporting requirement of the statute. The School District’s argument that Diana G-D was not a “child coming before” it is without merit. Diana G-D is clearly a student of the School District and, therefore, is a child who comes before it in the same way the infant patient of a pediatrician comes before that physician during a routine medical ex *985 amination. However, the act of a child “coming before” a designated mandatory reporter is only the first prong of a two-prong test as set forth in the statute. Not only must the child come before a mandatory reporter, the child must also provide the mandatory reporter with “reasonable cause” to suspect abuse.
Here, however, while Diana G-D was a “child coming before” the defendants she did not provide them with facts which gave them reasonable cause to suspect that she was being abused. Notably, none of the school employees witnessed any acts of the alleged abuse, saw any physical injury to Diana G-D, or observed any behavioral issues from Diana G-D which would have given any of them “reasonable cause” to suspect abuse or maltreatment at home. Further, when questioned by her teachers, Diana G-D appeared happy and denied that there were any issues at home.[4]
This is in direct contrast to the two young girls in Isabelle V. v City of New York (150 AD2d 312 [1989]) in which the Appellate Division reversed the motion court’s decision and granted defendant hospital’s motion to dismiss the complaint based upon the immunity conferred upon it by Social Services Law § 419. In Isabelle V., the plaintiff brought her three-year-old daughter to defendant hospital for examination. The child had a sore throat and vaginal discharge. When plaintiff stated that her daughter’s seven-year-old cousin who lived in the same household had a similar discharge, she was told to bring both children in for examination the next day. During the examination of the seven year old, the child seemed very frightened and a Spanish *986 interpreter was summoned. Although the child’s answers to questions about sexual abuse by someone in the household were negative, the interpreter believed that the child was not being truthful and that she was “afraid of something.” A physical examination of the seven year old revealed that she, too, had a vaginal discharge. Throat and vaginal cultures were taken from both children and sent to a laboratory for testing for venereal disease. Ultimately the report suspecting abuse was determined to be unfounded. While the procedural posture of Isabelle V differs from this case, it is clear that Isabelle V. and her cousin were children “coming before” the defendant hospital. Additionally, the girls’ medical condition as well as the older girl’s appearance of being “afraid of something” provided the defendant with “reasonable cause” to suspect abuse.
In this case, it is important to note that during the parent-teacher conference, Ann D. expressed concern about Diana G-D’s behavior in school based upon what she claimed was Diana G-D’s behavior at home. However, it is undisputed that Diana G-D appeared happy and was well behaved in school. Therefore, it is not clear what the School District was supposed to do about Ann D.’s concern. Furthermore, Ann D. did not raise any concern to the school at the parent-teacher conference regarding whether Diana G-D was being sexually abused at home.
Accordingly, based upon the foregoing, the court finds that defendants did not have “reasonable cause” to believe that Diana G-D was being abused. Notably, Diana G-D herself did not provide any reasonable cause to suspect she was being abused. Defendants could not rely on the thirdhand hearsay statements of Mrs. D. or the general concern of Ann D. regarding Diana G-D’s behavior at home to support “reasonable cause” to believe she was being abused.[5] Thus, in this case defendants had no *987 duty to report suspected child abuse, pursuant to Social Services Law § 413.
Nevertheless, even if this court found that defendants failed to report the alleged abuse, there is simply no evidence that defendants’ failure to make such a report was knowing and willful (see Social Services Law § 420; see also Estate of Pesante v County of Seneca, 1 AD3d 915 [4th Dept 2003]; Estate of Pesante v Geneva Medical Group, LLP, 2002 NY Slip Op 50083[U] [2002]; Zimmerman ex rel. Zimmerman v U.S., 171 F Supp 2d 281 [SD NY 2001]; cf. Lara v City of New York, 187 Misc 2d 882 [Sup Ct, NY County 2001]).[6]
First, it is clear that based upon the hearsay statements of Mrs. D. and the concern of Ann D. regarding Diana G-D’s behavior at home, defendants took quick action. Ms. Graboski immediately commenced an investigation by gathering information about Diana G-D from her teachers. She then had two of Diana G-D’s teachers talk to Diana G-D.[7] The teachers questioned Diana G-D regarding whether she was at the slumber party and then asked her if there were any problems at home.[8] At that time, Diana G-D, who appeared happy, indicated that she was not at the slumber party and that things at home were *988 fine. Therefore, at this time, all defendants knew was that Diana G-D appeared fine and denied any problems at home. They had no knowledge of sexual abuse since they could and should not rely on thirdhand hearsay statements as the sole basis for suspecting abuse.[9] Thus, as a matter of law the court finds that defendants did not knowingly and willfully fail to report suspected child abuse.
Based upon the foregoing, the School District’s motion for summary judgment is granted, Kelly Cieslinski-Schleuter’s motion for summary judgment is granted, and Victoria Graboski’s motion for summary judgment is granted.

. Although Ann D. was not married to Cesar Joel Sagastume Morales, Diana G-D considered E. her stepbrother and Sagastume Morales her stepfather.

. The plaintiff acknowledges that the second trigger for mandatory reporting, i.e., when the abuse is reported by a parent, guardian or a person in *980 charge of the minor with personal knowledge of the abuse, is not applicable in this case. There is no dispute that Mrs. D. is not a person legally responsible for Diana G-D.

. In Carossia v City of New York (39 AD3d 429, 431 [1st Dept 2007]), the Appellate Division, in reversing the denial of defendants’ motion for a directed verdict on plaintiff’s cause of action for negligent infliction of emotional distress, found that
“[w]hile the caseworker’s actions in this matter were far from exemplary, she was presented with serious allegations of child sexual abuse, which were seemingly confirmed to one degree or another by the child, although apparently through a series of misunderstandings as to what the child meant. Nevertheless, there was reasonable cause to suspect that the child might have been abused when the caseworker determined to remove the child.”
Therefore, the Court found that caseworker was entitled to a qualified immunity from liability. Notably, while the Carossia plaintiffs cause of action was one for negligent infliction of emotional distress, it is nevertheless instructive regarding what constitutes “reasonable cause” for suspecting child abuse. Here, however, the mandatory reporters were presented thirdhand allegations of sexual abuse which were not confirmed by Diana G-D.

. The court notes that had defendants made a report of suspected child abuse which was subsequently determined to be unfounded, they would have been granted qualified immunity pursuant to Social Services Law § 419, provided there was reasonable cause to suspect that the child might have been abused and the defendants had acted in good faith in making the report. Notably, in order to lose this immunity a plaintiff must establish that the reporter’s acts were “willful misconduct or gross negligence.” In contrast, pursuant to Social Services Law § 420, civil liability is imposed if the reporter knowingly and willfully failed to report suspected child abuse. Reading these two statutes together, it is clear to this court that the legislature intended to allow the exercise of good faith professional judgment in reporting or not *987 reporting alleged suspected child abuse (see Estate of Pesante v Geneva Medical Group, LLP, 2002 NY Slip Op 50083[U] [Sup Ct, Seneca County 2002] [defendant physicians who did not report alleged suspected abuse simply used their professional judgment in a reasonable manner, based on what they knew at the time]; cf. Alex LL. v Department of Social Servs. of Albany County, 60 AD3d 199 [3d Dept 2009], lv denied 12 NY3d 710 [2009] [the Court found that two Department of Social Services workers’ professional judgment was appropriate in view of the decisions they made during a custody proceeding]). If this were not the case, a mandatory reporter would be expected to automatically report any statements made to it. This type of knee-jerk or automatic reporting was clearly a concern of the legislature when it enacted Social Services Law § 413 et seq.

. The court notes that both plaintiffs complaint and bill of particulars allege that defendants negligently failed to report the abuse of Diana G-D. There is no cause of action for negligent reporting pursuant to Social Services Law § 420. (See Zimmerman ex rel. Zimmerman v U.S., 171 F Supp 2d 281 [2001].)

. The court makes no determination regarding whether the two teachers who, at Ms. Graboski’s request, had a discussion with Diana G-D were the appropriate School District personnel to investigate whether the statements reported by Mrs. D. were true.

. Contrary to plaintiffs contentions, whether defendants should have investigated further is not an issue which need be considered. Rather, the issue is based upon the information defendants had at the time they questioned Diana G-D — did they knowingly and willfully fail to report suspected child abuse? (See Mosher-Simons v County of Allegany, 1997 WL 662512, 1997 US Dist LEXIS 16426 [WD NY 1997].)

. As discussed herein, a main concern of the agencies reviewing the statute was that unfounded reports could be filed where there was no abuse.